FORD v. BRADFORD.   (7 Div. 551.)

(Supreme Court of Alabama.   March 19, 1925.)

I. Boundaries ⟨⟩35(3)—Testimony as to what was found at time of making survey held pertinent, and testimony admissible, as shorthand rendering of facts.

In action for cutting timber, involving boundary dispute, testimony of witness who was present when survey was being made, that surveyor tested places called for by government field notes, that trees found were same as those called for by field notes, and that they

measured distance which a certain tree "belonged to be," was pertinent, and, being mere shorthand rendering of facts, not objectionable.

**2. Evidence ⬅222(3)—Defendant's agreement to haul and saw logs and pay plaintiff one-fourth held admissible as tending to show admission of plaintiff's ownership.**

In action for cutting timber, testimony that it was agreed that defendant should haul away and saw timber which had been cut, and give plaintiff one-fourth of lumber, was admissible as a circumstance tending to show an admission by defendant of plaintiff's ownership of trees.

**3. Accord and satisfaction ⬅5—Compromise and settlement ⬅6(2)—Evidence ⬅213 (I)—Negotiations looking to compromise are privileged communications; disputed claim sufficient consideration for agreement of accord or compromise.**

Negotiations looking to a compromise of controversies are, on grounds of public policy, privileged communications, but if negotiations proceed to an accord, existence of a bona fide controversy is sufficient consideration to support agreement.

**4. Trespass ⬅45(5)—Evidence of amount of lumber sawed from logs cut, and its value, admissible.**

In action for cutting timber, evidence of amount of lumber sawed from logs alleged to have been unlawfully cut from plaintiff's land, and its value, was admissible.

**5. Boundaries ⬅35(3)—Testimony as to what was found at corner at which survey was being made improperly excluded.**

In boundary dispute, testimony of one present when survey was made that surveyor measured from certain corner, and as to whether he noticed any hacks along the south line of section, *held* admissible.

**6. Boundaries ⬅35(I)—Former surveys admissible in connection with later one.**

Former surveys, evidenced by usual surveyors' marks, may be shown in connection with later survey.

**7. Boundaries ⬅35(4) — Evidence that survey acquiesced in as section line competent.**

In boundary dispute, evidence that a former survey was generally known and acquiesced in by adjoining landowners as the section line was competent.

**8. Boundaries ⬅35(3)—County surveyor of long experience may give opinion as expert as to correctness of survey.**

A surveyor shown to have had long experience as county surveyor, after stating acts relating to his survey, may give his opinion as an expert that survey is correct and line as surveyed is true line.

**9. Boundaries ⬅33—Ancient survey presumed correct when accepted as correct by interested parties.**

An ancient survey is presumed to be correct when accepted and treated by parties interested as correct, and presumption becomes of increased importance as time effaces evidence of original government survey.

**10. Evidence ⬅5(2)—Common knowledge that present day surveys, relying on courses and distances, often fail to follow original lines.**

It is common knowledge that 30 or more years ago, evidences of government surveys were more likely to be found than at present, and that bearings of present day surveys, relying on courses and distances, often fail to follow original lines.

**11. Boundaries ⬅37(3)—Ancient corners and surveys, and possession in conformity thereto, given weight in land line controversy.**

Evidence as to ancient corners and surveys, and of long continued possession in conformity thereto, are of weight in courts when land lines are in controversy.

**12. Adverse possession ⬅85(I)—Possession in accordance with survey made for purpose of locating dividing line presumed adverse.**

Where parties engage service of surveyor for purpose of locating line between them, have survey made and erect fence on line and clear and cultivate with reference thereto, their possession is presumed to be adverse and perfects title if continued for statutory period.

**13. Adverse possession ⬅66(I)—Tentative dividing line for convenience of parties not basis for adverse possession.**

Mere tentative dividing line made for convenience to await location of future true line furnishes no basis for adverse possession, and can only become so by open, hostile assertion of claim of title thereto.

**14. Boundaries ⬅35(4)—Exclusion of testimony of defendant's predecessor as to whether he cultivated land under claim of ownership held error.**

In action for cutting timber involving boundary dispute, testimony of defendant's predecessor in title as to whether he cultivated land south of dividing line under claim of ownership, and that trees cut were on plaintiff's side of line under which he held, was improperly excluded.

**15. Trial ⬅74—Objection that answer irresponsive not a good objection.**

Objection that answer is not responsive to question is not a good objection by any but party asking question.

**16. Boundaries ⬅35(4)—Testimony as to claims made by plaintiff's predecessor in title improperly excluded.**

In action for cutting timber involving boundary dispute, testimony of defendant's predecessor as to claims asserted by plaintiff's predecessor, running of line and building of fence *held* improperly excluded.

**17. Boundaries ⬅35(4)—Statement of defendant, sued for cutting timber, to his cutters, pointing out line claimed by plaintiff properly admitted.**

In action for cutting timber involving boundary dispute, evidence that defendant in-

structed his cutters not to go down to line claimed because he wanted to be certain, and pointed out line claimed by plaintiff, was properly admitted.

### 18. Trespass ⬡➡63—Defendant not liable for penalty for cutting trees cut by agents without defendant's knowledge.

Defendant is not liable for statutory penalty for cutting trees on land of another, willfully and knowingly, for any trees cut by his agents in violation of his instructions and without his knowledge, though agents knowingly went beyond line.

### 19. Trespass ⬡➡45(3)—Testimony of defendant as to boundary line held admissible.

In action for cutting timber, testimony of defendant that line was pointed out to him by his predecessor in title, that line had never been questioned until plaintiff purchased his land, and that such line was the one defendant pointed out to his cutters, was properly admitted.

### 20. Trial ⬡➡217—Verdict based on counts ex delicto and ex contractu should state under what counts it is given.

Where counts ex delicto are joined with counts ex contractu, court should instruct jury that if they find for plaintiff they should say by their verdict under what count or counts verdict is given.

Appeal from Circuit Court, Clay County; E. S. Lyman, Judge.

Action by A. C. Ford against J. F. Bradford. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Transferred from Court of Appeals under Acts 1911, p. 449, § 6.

Walter S. Smith, of Lineville, for appellant.

Ownership of the land from which trees are cut is an essential element of the right to recover the statutory penalty. White v. Farris, 124 Ala. 461, 27 So. 259. Adverse possession must be under color of title and bona fide claim of ownership. Brooks v. Rogers, 101 Ala. 124, 13 So. 386. The corners and boundaries established by government survey are established and cannot be altered by other surveys. Field notes of the original survey are competent. Billingsley v. Bates, 30 Ala. 376, 68 Am. Dec. 126; 9 C. J. 164, 285. A boundary may be established by recognition and acquiescence. 9 C. J. 244, 246. A surveyor may state that a line run by himself is correct. Shook v. Pate, 50 Ala. 91. Evidence of boundary by reputation is not admissible, where field notes of original survey afford means for ascertaining the true location. 9 C. J. 276.

A. L. Crumpton, of Ashland, for appellee.

Counsel argues the questions raised, but without citing authorities.

BOULDIN, J. The suit is to recover for trees alleged to have been cut on plaintiff's land. The original complaint contained three counts: One for the statutory penalty for cutting trees, one in trespass, and one in trover. The case was here on former appeal. See Ford v. Bradford, 210 Ala. 48, 97 So. 55.

After the cause was remanded, common counts were added. In the latter trial all these counts were submitted to the jury except the count for money had and received, which was charged out by the court. There was plea of the general issue as to all counts, and a special plea to the first three counts, in which defendant denies cutting plaintiff's timber, and avers that "if he did cut timber from the lands alleged in the complaint, it was under the honest belief and impression that it was from his own land." By joining issue on this plea it was made a good answer, if proven, to the counts in trespass and trover.

There are 125 assignments of error, of which about 100 relate to rulings on evidence. All these must be viewed in the light of the issues made by the pleadings. We seek to deal with them, so far as presented in briefs, in such manner as to best illustrate the principles involved.

The parties are adjoining landowners, the trees cut being near the boundary and claimed by each to be on his land. Plaintiff's land is described in his deed and the count for statutory penalty as S. ½ of S. W. ¼ of section 16, etc. Defendant's land lies north and adjoins for three-fourths the distance, beginning at the northeast corner of plaintiff's land.

It may be noted here that in the count for statutory penalty, the right of recovery is limited to trees cut on lands within the government subdivision named, to be determined by a correct survey. The other counts merely claim the trees as the property of plaintiff, and, the evidence warranting, a recovery may be had if the trees were on plaintiff's side of an agreed line, or one established by acquiescence and adverse possession.

It appears that after the trees were cut each party had the disputed line surveyed by a county surveyor. Plaintiff's survey is known in the case as the Currie survey, and that of defendant as the Horn survey. The southwest corner of plaintiff's land is the southwest corner of the section, and both surveyors undertake to locate this corner. Horn's survey located it about 185 yards south of its location in the Currie survey, resulting in a corresponding difference in the location of the east and west boundary line in dispute. The evidences of the true location of the southwest corner of the section thus became a matter of prime importance.

[1] On examination of the plaintiff as a witness, the government field notes of this

---

corner were introduced, calling for two red oaks, a post oak, and a chestnut, as pointers. Witness testified he was present when Currie made the survey; that he had the field notes at the time, and describing what was found as evidence of the corner, said:

"We found a chestnut stump that was plowed up, and when we measured off the distance the chestnut belonged to be, we taken a mallet and found some roots where the chestnut came from."

The court granted a motion by defendant to exclude the statement that they "measured off the distance the chestnut belonged to be"; also a motion to exclude his statement that the surveyor "tested at the other places called for by the notes—he tested for the trees"; and sustained objection to the question whether was found "the same kind of trees the field notes called for, and that have been offered in evidence."

In all these rulings the court was in error. What search was made for original evidence of the corner was pertinent as part of the survey. What was found went to the correctness of the survey, and the manner of statement as a mere shorthand rendering of facts is not objectionable.

[2-4] The testimony of plaintiff that it was agreed defendant should go ahead and haul the timber which had been cut, and saw it, and give plaintiff one-fourth the lumber, was improperly excluded. In connection with other evidence given by plaintiff it was a circumstance tending to show an admission of plaintiff's ownership of the trees. If the agreement was made by way of compromise, it was admissible under the common counts. Negotiations looking to a compromise of controversies are privileged communications. This on grounds of public policy—the encouragement of adjustments and good neighborhood. But if the negotiations proceed to an accord, the existence of a bona fide controversy is sufficient consideration to support the agreement. Evidence of the amount of lumber sawed from the logs and its value should also have been received.

[5] Witness Ward testified to being present at the Currie survey, and the evidences found at the southwest corner of the section. His further evidence that the surveyor measured from that corner was improperly excluded. There was also error in sustaining the objection to the question: "In running the south line of section 16, did you notice any hacks along there?"

[6, 7] Former surveys, evidenced by the usual surveyors' marks, may be shown in connection with the later survey. Evidence also offered that this was generally known and acquiesced in by adjoining landowners as the section line was competent. Billingsley v. Bates, 30 Ala. 376, 68 Am. Dec. 126.

[8] A surveyor shown to have had long experience as a county surveyor, after stating the facts relating to his survey, may give his opinion as an expert that his survey is correct, and that the line as surveyed is the true line. Smith v. Bachus, 195 Ala. 8, 70 So. 261. There was error in refusing the offered testimony of the witness Currie on these points.

The evidence for plaintiff tended to show that more than 30 years ago the owner of one of the adjoining tracts had a surveyor, Pitts, to survey and locate the line between them. Some evidence supports the view that the line was surveyed and marked then, or thereafter, the entire half mile distance. Other evidence is to the effect that the survey extended only one-quarter, the west end, and not through the wooded portion where the timber was cut. The evidence further tended to show that following this survey a fence was erected through the cleared land, and a hedgerow still marks the site of the old fence; that the adjoining owners cultivated to that fence; that no question or controversy existed as to the line so located for more than 20 years thereafter.

[9] This evidence has an important bearing on two propositions: First. An ancient survey at the instance of the parties interested, when accepted and treated by the parties as correct, is presumed to be correct. This presumption is rightly esteemed of increasing importance as time effaces the evidence of the original government survey, such as marks on trees shown by the field notes in this case.

[10, 11] The wide variance between the surveys made here by official surveyors is a warning that new surveys based on uncertain data tend to breed controversy, and to unsettle titles and boundaries. All the rules of law aiming at repose of titles are pertinent here. It is common knowledge that 30 or more years ago the evidences of the government surveys were more likely to be found than now. Moreover, it may be said to be common knowledge that the bearings of present day surveys, where courses and distances are relied upon, are very liable to be in error, or rather, fail to follow the original lines, unless some original corners or lines aid in making a check and correction of trial lines. Evidences afforded as to ancient corners and surveys, and of long continued possession in conformity thereto, should have due weight in making surveys, and in the courts when land lines are in controversy. Chambless v. Jones, 196 Ala. 176, 71 So. 987; Cooper v. Slaughter, 175 Ala. 211, 57 So. 477.

[12] Second. When parties engage the services of a surveyor for the purpose of locating the line between them, have a survey made, proceed to erect a permanent fence on the line, make their clearings, cultivate, and cut timber with reference to that line, their possession is presumed to be adverse, and, continued for the statutory period, perfects title to such line. The status of possession

so held between the then owners is presumed to continue as between their successors in title.

[13] This rule is not in conflict with the other rule that a mere tentative line, made for convenience to await the location of the true line at some future time, furnishes no basis for adverse possession, and can only become so by open, hostile assertion of claim of title thereto.

In the former case the parties have gone about the business of locating the line between them that each may have and enjoy his own. When they have accomplished that purpose to their mutual satisfaction, the possession does not originate or continue under an admitted possibility of mistake; the parties are claiming to the line as the true line. It is immaterial that neither ever intended to claim property not his own. The honest man never intends to claim beyond the line which he deems the true line. The possession is adverse if it is located as the true line, and treating it as such, he takes and holds the lands to the line as his own under claim of right.

There was evidence by Mrs. Powell, plaintiff's vendor, to the effect that she derived title to the 80-acre tract through Mr. Dewberry; that she held undisturbed possession to the line marked by the fence for more than 20 years, and long after the defendant acquired the adjoining lands.

[14] Plaintiff's witness Jim Wood testified that he was a predecessor in possession and ownership of defendant's tract; also, as to the Pitts survey, the erection of the fence on the line, and the possession of both parties in recognition of the Pitts line; that he rented the cleared land from Mr. Powell south of the fence. He was asked: "Tell the jury whether or not you cultivated land south of that fence under claim of ownership." Objection to this question was erroneously sustained. His testimony that trees were cut on the plaintiff's side of the line under which witness held possession, should also have been admitted.

Speaking of the Powells, plaintiff's predecessors in title, he said:

"They were claiming to the fence, my father put it through there, Mr. Pitts run and established the line, and he hired Bill Dewberry to put the fence on that line that Mr. Pitts established."

[15, 16] The objection that this testimony was not responsive to the question was not well taken in any event. None but the party who asks a question can complain of the answer being irresponsive. The fact that the answer was not indicated by the question is good reason for not objecting to the question, and for a motion to exclude on any ground going to the legality of the testimony, but not on the mere ground that it was irresponsive. The testimony was improperly excluded, even on apt objection. The questions to the same witness to draw out whether the trees cut were south of the line of the fence, if extended east through the wooded land, were also proper, and such testimony should have been admitted.

What we have said will indicate that plaintiff's objections to defendant's testimony on like matters were properly overruled.

[17] The testimony that in giving instructions to his cutters defendant "said do not go down to where they claim the line; I want to be certain," and that the line he pointed out was the line extending from the hedgerow east, was properly admitted.

[18] Under the count for the statutory penalty for cutting trees on the lands of another "willfully and knowingly," the defendant is not liable for any trees cut by his agents in violation of his instructions, and without his knowledge, although the agents may have knowingly gone beyond the line. Under special plea No. 2 this evidence was admissible in defense of the counts in trespass and trover.

[19] The testimony of defendant that the line was pointed out to him by his predecessor in title, that this line had never been questioned by adjoining owners until plaintiff purchased his lands, and that this was the line pointed out to his cutters, was all properly admitted.

[20] Where counts ex delicto are joined with counts ex contractu, it is proper for the court to instruct the jury that, if they find for plaintiff, they should say by their verdict under what count or counts the verdict is given. This furnishes needed information as to the property subject to levy under execution on the judgment.

For errors pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.