56 So.2d 644

**UPTON et al. v. READ.**
**7 Div. 102.**

Supreme Court of Alabama.
Jan. 24, 1952.

Ross Blackmon, Anniston, and Martin & Hinton, Gadsden, for appellants.

594

Wm. C. Bibb, Anniston, for appellee.

SIMPSON, Justice.

Plaintiffs sued defendant Read for cutting timber on lands allegedly owned by them. Count 1 was in debt to recover for the statutory penalty, Code 1940, Title 47, § 272, Count 2 was in trespass, and Count 3 in trover. From a verdict and judgment for the defendant the plaintiffs have appealed.

The suit arose over a disputed boundary line separating plaintiffs' forty acres on the west from the forty on the east on which defendant had authority to cut the timber. The plaintiffs derived title from their father and it was their contention on trial that, regardless of where the true line dividing these two forties was, their said ancestor and the owner of the forty on the east had agreed to a survey made by one Morton in 1931 as the division line between the properties, since which time both parties had held up to said line as the true line, under which situation the parties had acquired title by adverse possession up to said established line and a different line,

which defendant contended for, could not thereafter be successfully established by a new survey, citing such well known cases as Williams v. Bedsole, 174 Ala. 125, 56 So. 567; Home Loan Co. v. Calhoun, 213 Ala. 408, 104 So. 797; and Gunn v. Parsons, 213 Ala. 217, 104 So. 390.

The fallacy of this position is that the plaintiffs' complaint was not laid under such a theory. The complaint did not describe the property on which it is alleged the timber was cut by metes and bounds, but alleged that the timber was cut on the NW¼ of the NE¼ of Section 21, Township 13, Range 7, thereby making the issue the determination, according to government survey, of the true line dividing these two government subdivisions of the quarter section. Oliver v. Oliver, 187 Ala. 340, 65 So. 373; Livingston v. Nelson, 200 Ala. 507, 76 So. 449.

The plaintiffs could have so framed their complaint as to bring into issue the question of an agreed boundary line between the two properties, but did not do so. The complaint limited recovery to timber cut by defendant on the NW¼ of the NE¼ of said section. The question then was not one of location of a boundary line between the properties as determined by the acts of the parties, as was discussed in the Bedsole and other cases, supra, but rather one of location of the dividing line between the NW¼ of the NE¼ and the NE¼ of the NE¼ of the sections; that is, the location of the subdivision line between the two forties according to the government survey setting up the section lines, corners, etc. This conclusion is attained from such cases as Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409, holding to the effect that no act of the parties can relocate the section line as established by government survey, and other cases as Oliver v. Oliver, supra, and Edwards v. Smith, 240 Ala. 397, 199 So. 811, making the same principle applicable to the interior subdivision lines of a government surveyed section. The last cited case has this pertinent observation: " * * * These interior subdivision lines, not surveyed or marked in the government survey, are none the less

certain in legal contemplation. They are fixed and determinable by a subdivision of the section, using the four corners of the section shown on the official field notes. * * *". 240 Ala. at page 399, 199 So. at page 813.

Illustrative also is Oliver's Case, supra. Though that case was in ejectment, the governing principle is the same. There the plaintiff sued to recover a disputed strip on the north side of the SW¼ of the SW¼ of a certain section and the defendant filed the statutory disclaimer, thereby confessing the plaintiff's possession of the described forty and alleging that he was the owner of the NW¼ of the SW¼ of said section and suggested that the suit arose out of a disputed boundary line between the said two forty-acre tracts. With regard to the issue thus presented the court, speaking through Mr. Justice Somerville, observed:

"Under the issues made by the pleadings and submitted to the jury, it was clearly not permissible for plaintiff to show title by adverse possession to any part of the N.W.¼ of the S.W.¼ of section 34. * *

"The land sued for is described in the complaint as a part of the S.W.¼ of the S.W.¼ of the section according to the public survey of the government, and the sole questions at issue were where the dividing line between the subdivisions in question was properly located under that scheme of survey, and whether defendant had possession of any land south of that line.

"Plaintiff's theory of the case seems to be that any recognition by former owners of the two tracts of a 'made line,' wherever it might be, was binding upon them, although their respective deeds and titles were based on the lines of the government survey, and regardless of the absence of an adverse possession up to such line.

"This is not the law, for recognition by adjoining owners of a false line as the boundary between them is without effect, unless the party claiming beyond the true line also holds hostile possession up to the false line until the bar of the statute is complete. Even a formal agreement between them as to such a line could not, of itself, vest title in one of them beyond the true line to which each actually owns. Certainly it could not have the effect of transferring one part of a government survey 40 to the 40 just below it, although acquiescence in such a line would prima facie indicate its verity. * * *

"The several charges requested by plaintiff on the erroneous theory above noted were properly refused as being foreign to the issues involved. If plaintiff was claiming title to any part of the N.W.¼ of the S.W.¼ by adverse possession—having no title by deed—she should have included it by some appropriate description in the subject-matter of her complaint. The boundaries of a subdivision of the government survey are fixed by that survey, and, when the nomenclature of that survey is used, it must thus be interpreted. The issues here submitted to the jury required them to determine a subdivision line of the government survey, and none other." 187 Ala. at pages 343–344, 65 So. at page 375.

Of like import is Ford v. Bradford, 212 Ala. 515, 103 So. 549.

■ However, it must be pointed out that under an issue of the location of the subsidiary lines of a section, the plaintiff is entitled to introduce evidence showing an agreement by the adjoining landowner to consider a certain line as the true boundary line between the parties. But the tendency of such evidence under the issue framed by the pleading in this case would only go to show the true location of the subsidiary line of the section, the rationale being that acquiescence in such a line by the adjoining landowners would be substantial evidence to be considered by the jury in the determination of the location of the true line. Taylor v. Fomby, 116 Ala. 621, 22 So. 910; Smith v. Bachus, 195 Ala. 8, 70 So. 261; Wragg v. Cook, 220 Ala. 111, 124 So. 228; Baldwin v. Harrelson, 229 Ala. 469, 158 So. 416.

■ The issue to be determined was for the jury under the conflicting evidence presented, and no error can result from the

596

trial court's refusal to give the affirmative charge for the plaintiffs or from his refusal to grant a new trial on the ground that the verdict was against the great weight of the evidence.

■ Charges A, B, N, 106, 107, 108, and 112, given at the request of the defendant, were in substantial accord with the governing rules above, and although some of these charges were perhaps argumentative and others misleading, they did not probably injuriously affect the plaintiffs' case. We do not, therefore, reverse for their giving. Ray v. Richardson, 250 Ala. 705, 36 So.2d 89; Harrison v. Mobile L. & R. Co., 233 Ala. 393(11), 171 So. 742.

■ Charges 1, 4, 6, 7, 8, and 9, which were refused plaintiffs, sought to exposit the stated theory of plaintiffs, which was beyond the scope of the pleading, and were clearly misleading. There was no error in refusing them. American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791(12).

■ The final assignment of error argued relates to the sustaining of an objection propounded by his counsel to one of the plaintiffs, Samuel Upton. As stated, plaintiffs contended for the Morton line (the line surveyed in 1931 by Morton) and witness had testified as to his familiarity with this line. The question propounded to him, objection to which was sustained, is as follows: "Q. [by his counsel] Now, I want you to tell the court and jury whether or not all of these 75 trees that you counted were west of *this line on the northwest quarter of the northeast quarter,* according to that survey?" (Emphasis ours.) Manifestly, the question called for the conclusion of the witness that the Morton survey was the "line on the northwest quarter of the northeast quarter." Since the only point in issue was the true division line between these two government subdivisions, the question propounded invaded the province of the jury and the objection was properly sustained.

We find no error to reverse.

Affirmed.

LIVINGSTON, C. J., and FOSTER and GOODWYN, JJ., concur.