78 So.2d 324

### Ida DOUGHERTY et al.

v.

### Mary Emma HOOD.

5 Div. 606.

Supreme Court of Alabama.

Dec. 16, 1954.

Rehearing Denied March 10, 1955.

312

Walter B. Venters, Opelika, for appellants.

Wm. C. Hare, Tuskegee, and Edw. H. Reynolds, Notasulga, for appellee.

PER CURIAM.

This is an appeal by respondent in an equity suit to settle a disputed boundary line between complainant and respondent.

■ A motion to dismiss the appeal appears in this cause. It is not on transcript paper and was filed after the cause was submitted, so that there has been no submission on the motion. It is based on a failure to file the transcript in this Court within the time required by law. Therefore, it does not go to the want of jurisdiction of this Court, and in such status it cannot be considered.

The parties are coterminous landowners in section 13, Township 18, Range 24 in Lee County. Complainant owns land to the north and respondents own land to the south of the line in dispute. Complainant's paper title makes her land extend to the south boundary line of the SW¼ of NW¼ of section 13. Respondents' paper title extends north to the same line, being in NW¼ of SW¼ of section 13.

There is a wire fence extending east and west on or near the half mile line between the SW¼ of NW¼ and NW¼ of SW¼. Complainant claims that the true line according to the government survey extends south of that fence and about ten to fifteen feet from it. Respondents claim that the fence is on the true line: but if that is not the true line they have had adverse possession for more than ten years of the land south of the fence, even though this area in dispute may be found to be in the SW¼ of NW¼ and not in the NW¼ of SW¼ of section 13. For a long time there has existed across the forty a roadway extend-ing east and west and south of the fence. It has been in some sort of use for a great many years. For an uncertain period respondents have maintained a gap of some kind at each end of the road so that the land south of the fence, including the road area, could be enclosed as one field. People would "let down the gap" and go through without let or hindrance. Finally a dispute arose over it, resulting in this suit. Respondents claimed adversely to the fence erected by complainant's predecessor in title and such claim has continued for a long indefinite period of time. Complainant had a survey made by a surveyor named Sizemore, by which there was an attempt to locate the true line with reference to the government survey. This line run by the surveyor is the line complainant contends is the true dividing line between the two forties and claims that respondents have not acquired by adverse possession the strip between it and the fence. The line was also run by a surveyor named Pickett, which is said to be located substantially the same as that run by Sizemore. The details of the Pickett survey are not otherwise given, and he did not testify. Before Pickett made his survey the parties agreed that he should do so and they would abide by such survey. Respondents Dougherty did not abide by it.

■ It is apparent from the decree that the court meant to hold that the true line between the two forties is as surveyed by Sizemore and Pickett, and undertook to comply with section 4, Title 47, Code, by appointing Sizemore as a surveyor who was found to be competent, "to establish a permanent stone or iron landmark at the east end and another at the west end of the aforesaid adjoining tracts of land on the line herein fixed as the true boundary line between the respective parties; that he shall mark thereon the following words, 'Judicial landmark'; and he shall then make due report of his action to this court as provided by section 4, Title 47 of the Code of Alabama of 1940, and the register of this court will forthwith issue a proper order to said surveyor to proceed accordingly." The decree then directed that a writ of possession issue, using as the true line the one

"fixed herein". It is obvious that the court was rendering a final decree and directed the surveyor to mark the corners of the line which he had surveyed according to his survey. It is distinctly not a direction for a survey to be made to locate the line as authorized by section 5, Title 47, Code, before a final decree is rendered. The trial was conducted under Equity Rule 56, Code 1940, Tit. 7 Appendix, and the testimony was heard in open court by the trial judge.

■■ In offering testimony on the trial, section 372 (1), Title 7, Pocket Part, Code, was observed with respect to objections to it. The court did not specially rule on the legality of any evidence, but under that statute, we presume, he only considered that which was relevant, material, competent and legal. We must uphold the finding by the court when there is legal evidence before him as if it were the verdict of a jury notwithstanding section 17, par. 1, Title 13, Code. Andrews v. Grey, 191 Ala. 152, 153, 74 So. 62. The trial judge "looked over the disputed land" in question. In the light of that situation we do not feel justified in reversing the finding of the court on the issue of adverse possession.

■ Appellants complain that the evidence was not sufficient to support the finding that the true line was as run by the surveyor and which the court had adopted. In locating the true half section line here involved, the surveyor testified that he began at a point at the SW corner of section 13, which was marked by a rock two feet high; that Mr. C. N. Godfrey pointed out the rock to him as the section corner, which was the intersection of two hedgerows. He testified he was not able to prove the field notes; that he had the field notes but the land had been in cultivation at one time and there were no trees or stumps that reasonably could have been there at the time of the original survey. This corner of section 13 was one actually surveyed and fixed by the original government survey and the field notes undertook to locate it. There is no evidence that Mr. Godfrey had any knowledge that the rock was on the corner as located by the government survey, and there was no other evidence that it was on the true corner. There are various ways to find the true location of a section corner. If there are no original markings of corners of the section and the field notes cannot help in that respect, and there is no subsequent official survey, other authentic sources of information must be pursued. The evidence must locate with reasonable certainty the lost corner. And whether it is so, is finally a question for the court (or jury) based on the evidence. Billingsley v. Bates, 30 Ala. 376, 380. A surveyor of long experience may sometimes give his opinion as an expert that the line as surveyed is the true line. The surveyor in this case did not give such testimony. The fact that a certain location is generally known and acquiesced in is admissible. Billingsley v. Bates, supra; Ford v. Bradford, 212 Ala. 515 (7 and 8), 103 So. 549; Clark on Surveying and Boundaries (2d Ed.) sections 348, 349. Cf. McLaurine v. Knowles, 257 Ala. 8, 57 So.2d 543.

The half section line here in dispute in section 13 was not established by the government survey. Nolen v. Palmer, 24 Ala. 391. It is provided in U.S.C.A., Title 43, § 752, that "the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line." To comply with that statute it is necessary to locate the SW corner and the NW corner of section 13, and find a point equidistant from each of them. Nolen v. Palmer, supra. Those corners should be located according to the required standards when they are available. Whether those standards have been met is not solely a question for the surveyor. The court must determine whether there is legal evidence sufficient to reasonably satisfy it that the corners used are the true corners. Clark on Surveying and Boundaries (2d Ed.) section 348, note 32; Billingsley v. Bates, supra. Such procedure was not here attempted. The surveyor Sizemore testified that beginning at the aforesaid big rock, he ran a line far enough north so that he was sure to intersect it as he later proceeded to run west on the center line of the section. He then went to what he called the SE corner of the SW

¼ of NW ¼ (the complainants' forty) and ran west until he reached the line he had run from the SW corner of the section. That at the point of origin of that center line there was a buggy axle, which was a little south of the center of the road referred to above. He did not explain why that was a proper point for the corner. It was an inside half a mile corner on a line not run by the government survey. The field notes do not describe it. He said he ran thence west. That seems to mean due west. It is very apparent that neither of the half section corners was located as directed by the United States statutes, supra.

It may be true, as the surveyor testified, that the true location of the SW corner of the section, whether north or south of the point where he started, is immaterial with respect to his survey. He was then only locating the west line of the section, so as to stop on his trip west in running the half mile line. In doing that the location of his starting point on the east was of great importance. Its true location and true direction controlled the location of that line.

The evidence of Guy Whatley was that he owned the land east of respondents' (Doughertys') forty. That another person (name not given) owned land east of Hood's forty and north of that belonging to witness, and the four of them had a common corner which was the SE corner of the Hood land (in the SW ¼ of NW ¼ of section 13). That when witness bought his land thirty-four years ago, he put an iron stake where it is now as the corner in question. That he had it surveyed before he bought it and then put the iron marker in place. There does not seem to have been any question raised as to the location of that corner until the instant controversy arose.

██ ∎It is apparent that the SW corner of section 13 cannot be located according to the field notes so as to be able to find accurately and exactly the half section corner. But we think the trial court on the evidence before it was justified in decreeing the half section line to be as located both by Sizemore and by Pickett as the parties agreed it should be. Clark on Surveying and Boundaries (2d Ed.) sections 563 and 571, note 19; Hobbs v. Cram, 22 N.H. 130. Therefore, his decree in that respect also should not be disturbed. His direction to have the corners as thus located properly marked naturally follows.

The decree of the trial court should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MAYFIELD, JJ., concur.