83 So.2d 65

**Caine O'REAR**

v.

**G. E. CONWAY et al.**

6 Div. 590.

Supreme Court of Alabama.

June 16, 1955.

Rehearing Denied Nov. 3, 1955.

Caine O'Rear, Jr., Jasper, for appellant.

Fite & Fite, Hamilton, for appellees.

PER CURIAM.

This is a boundary line dispute between appellant as complainant and appellees as respondents. There was a decree adopting the contention of respondents. Complainant has appealed.

The bill as amended alleges that complainant owns the SE ¼ of SW ¼ of Section 33, Township 11, Range 12, and the NW ¼ of SE ¼ of said section in Marion County; that appellee G. E. Conway owns the land in NE ¼ of SE ¼ of said section; James L. Hullet and Jesse Conway own the land in SW ¼ of SE ¼ of said section, known as the Woodham forty; and that the dividing line between them, respectively, is disputed. Complainant claims that the true line is as surveyed by C. R. Franks in April 1949, giving a description of that line as thus surveyed. The respondents answered the bill admitting the coterminous ownership and that the boundary line was disputed, and alleged that the true boundary line was as located in a survey by N. M. Appling in August 1949, giving a description of that line as thus surveyed. The trial court on the evidence taken ore tenus found and decreed that the Appling survey correctly located the line in dispute and described it as in the answer.

The evidence shows that both parties made claim under deeds respectively describing the land by government numbers. There was much evidence by respondents of adverse possession to the Appling line. None of the parties, nor their predecessors, had been in possession for the required length of time to acquire title in that way. Moreover, if they had been, their deeds to successors described it by the government numbers. So that the controlling inquiry is as to the location of the line in dispute by the government numbers. Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409; Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674; Spires v. Nix, 256 Ala. 642, 57 So.2d 89; Wilson v. Cooper, 256 Ala. 184, 54 So.2d 286.

The lines in question were not those which were actually run by the government surveyors, nor the corners established by them. The manner in which the original survey was conducted was controlled by an Act of Congress. Title 43 U.S.C.A. § 751 et seq. It is provided in section 752 that "the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line." Dougherty v. Hood, Ala., 78 So.2d

324.[1]  The corners of subdivisions were declared not to be established by that survey as were the section corners.  And if they were incorrectly located by that survey they were subject to be corrected by pursuing the formula prescribed by section 752, supra.  Walters v. Commons, 2 Port. 38; Nolen v. Palmer, 24 Ala. 391; Billingsley v. Bates, 30 Ala. 376–380.

According to complainant's contention, his surveyor Franks started "at a stone in the ground which is on the section line and *is the SW corner* of the SW ¼ of SE ¼ of section 33, Township 11, Range 12, and proceed north five degrees and twenty-nine minutes west", extending northward on that course, thereby locating the line extending north and south between complainant and respondents Jesse Conway and James Hullet.

According to the contention of respondents, which was approved by the court, the starting point of said line which their surveyor Appling used, was "at a well known rock corner *at the SW corner* of SW ¼ of SE ¼ of section 33, Township 11, Range 12, and run thence north three degrees west along the edge of the cultivated field".  So that both surveys start at a stone or rock, but located at different places on the south line of section 33, each described as being the SW corner of SW ¼ of SE ¼.  The maps show that the two rocks are substantially three hundred feet apart; and their course northward is not exactly the same, so that at the north line the corners are two hundred and eighty feet apart.  Both lines seem to extend along the same course eastward, but the location of the NE corner of SW ¼ of SE ¼ of section 33, as made by Franks for complainant, is three hundred feet further east than that made by Appling for respondents; and both are said to be marked by an old stone corner.

So that the surveys differ as to the location of the SW corner, NW corner and the NE corner of the SW ¼ of SE ¼ of section 33.  Franks' line then extends from his location of the NE corner of SW ¼ of SE ¼ north five degrees twenty-nine minutes through the center of a house known as the G. E. Conway or John Tesney house, thence continuing on said line one thousand three hundred and forty-two feet from the NE corner of SW ¼ of SE ¼ to an old stone which is claimed to be the NW corner of NE ¼ of SE ¼ of section 33.  Appling's survey for respondents continues from his location of the NE corner of SW ¼ of SE ¼ (which is three hundred feet west of its location by Franks, and where there is also a stone marker) thence north one degree and twenty-four minutes east for a distance of five hundred and thirty-five feet to a public road, thence running north on same variation thirteen hundred feet from the said NE corner of SW ¼ of SE ¼ to an old rock corner well known to be the NW corner of NE ¼ of SE ¼.  Both surveys found an old rock marking the NW corner of NE ¼ of SE ¼ of section 33, but at different locations.  That line is agreed to be more than a quarter of a mile.  Section 33 extending north and south is more than a mile long.

The chief contention between complainant and respondents Jesse Conway and Hullet is a strip about three hundred feet east and west between the SE ¼ of SW ¼ and SW ¼ of SE ¼; and that between complainant and G. E. Conway is a strip between the NW ¼ of SE ¼ and NE ¼ of SE ¼ about three hundred feet wide on the south end and ninety-seven and one-half feet wide on the north.  The main controversy seems to hinge on the correct starting point at the SW corner of SW ¼ of SE ¼ of section 33.  Both surveys find a rock at their respective locations; also a rock, so designated, at each respective corner along the route.  All of them are said to be well known as the located corners.

Both Franks and Appling are shown to be competent surveyors, of long experience. Franks testified that his survey was made with reference to the government field notes, though he did not use the variations as there stated.  A copy of the government field notes was introduced in evidence. He testified that he first "closed" section

I.  262 Ala. 311.

33. That was shown to mean that he found, as he thought, the location of the four corners as described in the field notes and the four sides. Of those four corners only one or perhaps two were claimed by Franks to be so marked as to be identifiable by their description in the field notes. (The SW corner and SE corner.) Franks testified that he also knew the SW corner of section 31, Township 11, Range 12 (which is supposed to be a corner of the township) by a pine knot which has been recognized as that corner for sixty years to his knowledge and known as the sassafras corner. That is, of course, two miles west of the SW corner of section 33. That he also knows the "Whitman" corner. It is the SW corner of section 35, Township 11, Range 12, which is two miles east from the SW corner of section 33, and four miles from the sassafras corner. He has known the Whitman corner to be well defined for forty years, and in his opinion it is a government corner. He began his (temporary) survey at the sassafras knot corner and measured five miles east on the township line, which includes the south line of section 33, to the mile post near the old Tom Russell place. That at the SW corner of section 32 he found a pine knot; at the SE corner of section 32, which is the SW corner of section 33, he found a stone corner "witnessed *by a hickory and pine tree*". Extending east for three miles from the sassafras knot corner, he "found a corner witnessed by a mountain oak and some other trees". It is known as the "Simon White" corner. (This was presumably referring to the SE corner of section 33.)

Appling got government field notes and began his preliminary survey at the SW corner of section 33, one-half mile west of the SW corner of SW ¼ of SE ¼ of section 33, after he had been to the sassafras corner, which he knew and located. He found at his starting point *stump holes which corresponded with the field notes*. Franks describes it as "a stone corner witnessed by a hickory and pine tree". Appling then ran east along the southern boundary line of section 33 to its SE corner where there was no marker, thence on eastward to the SE corner of section 34 (Whitman corner), where he found an iron pipe which he was told by many was the SE corner of section 34 (SW corner of section 35), and it checked with the government field notes. In going eastward from the SW corner of section 33, he found a rock corner *at the half mile point of section 33,* the same being the corner pointed out to him as being the SW corner of SW ¼ of SE ¼ of section 33. From that corner as a starting point in making the survey of the disputed line, he went northward to the NW corner of SW ¼ of SE ¼ of section 33. West of this line there was a wooded area, east of it a cultivated field about two-thirds of the way. Those corners and lines were identified by witnesses who had known them for many years. To the east of the line was a dwelling house (the old Whitman and later the Woodham dwelling). According to the Franks' survey the house would be on complainant's side; and according to Appling it would be in the SW ¼ of SE ¼ of section 33, the Woodham forty. Appling then ran the north line of the SW ¼ of SE ¼ of section 33, the Woodham forty. The end of this line locates the NE corner of the forty, where there was said to be an old rock corner. Appling then ran northward to another old rock corner which had been pointed out to him as the NW corner of NE ¼ of SE ¼ of section 33. Conway's residence was one hundred and eighty-seven feet east of his line. It was directly on the Franks' line.

The correct location of the SW corner of the SW ¼ of SE ¼ of section 33 is the proper starting point. It is not a corner established by the government surveyors. The statutory method is to find a point on the south side of the section which is equidistant from the SW corner and SE corner of the section. Nolen v. Palmer, supra; Dougherty v. Hood, supra.

■ It is not clear which surveyor found the correct point for the SW corner of the section. The description of it given by each surveyor does not purport to correspond with that of the other. As to the SE corner of the section Franks tes-

tified that it is known as the Simon White corner witnessed by a mountain oak and some other trees. Appling did not find evidence indicating the location of that corner. But he ran eastward another mile to the Whitman corner (SE corner of section 34) where he found authentic evidence of a corner, as did Franks. The south line of those sections is given as just a mile. So that a half mile east from the SW corner of section 33 correctly located should be the location of the SW corner of SW ¼ of SE ¼ of that section. It would seem, therefore, that the crucial question is to resolve their differences as to the location of the SW corner of section 33. That was a government fixed corner. If it can be identified by the description in the field notes, that is controlling. If it is obscure in connection with the field notes, it can be tied to other corners clearly fixed. Each surveyor claims that they did that and authenticated their respective location of the corner. The true location of section corners and lines when lost, with reference to the field notes, may be aided by the acquiescence and recognition of residents and property owners. Billingsley v. Bates, 30 Ala. 376; Ford v. Bradford, 212 Ala. 515, 518(6), 103 So. 549; McLaurine v. Knowles, 257 Ala. 8, 57 So.2d 543. That includes agreements of landowners as to the lines and corners. Upton v. Read, 256 Ala. 593, 56 So.2d 644.

Evidence of all such matters was introduced in this case, including the use of the land through the years in certain locations; the building of dwelling houses on the disputed tracts and their use for a generation; the physical appearance of the corner points and lines in question; acquiescence and recognition.

The trial judge was the arbiter of that controversy. He doubtless took into consideration all the facts and circumstances material to a decision of it. His finding should not be disturbed unless it is contrary to the great weight of the evidence. We cannot say that it is erroneous when so treated, and, therefore, should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MAYFIELD, JJ., concur.