96 So.2d 725

Jethro WHITE et al.

v.

Clyde C. BERREY et al.

I Div. 699.

Supreme Court of Alabama.

Aug. 22, 1957.

**380**

Paul S. Jones, Grove Hill, for appellants.

Adams, Gillmore & Adams, Grove Hill, for appellees.

LAWSON, Justice.

This is a boundary line dispute between appellees, as complainants, and appellants, as respondents. There was a decree adopting the contention of complainants. Respondents have appealed.

The bill as amended alleges that the complainants own the SE¼ of the NE¼ of Section 31, Township 8 North, Range 1 East, and that the respondents own the NE ¼ of the SE¼ of said section in Clarke County. It is further alleged that the boundary line between the lands so described is in dispute. Complainants allege that the true line is as surveyed by registered surveyors Espy and McVay, of Jackson, Alabama, and a description of that line as surveyed is set out in the amended complaint.

The respondents answered the bill admitting the coterminous ownership and that the boundary line was disputed and in their answer as amended the respondents allege that the true boundary line is as located in a survey by Grady Turner, a registered surveyor, which line the respondents describe in their amended answer.

The trial court submitted the issue of fact to a jury, which returned a verdict sustaining the contention of the complainants. Thereafter the trial court entered a decree following the verdict of the jury and fixing the disputed boundary line as found by the jury and as contended for by the complainants in their amended bill. Neither side was entitled to a jury trial as a matter of right. Section 3, Title 47, Code 1940; Lucas v. Scott, 247 Ala. 183, 24 So.2d 540. But the trial court was authorized to submit the issue of fact to a jury for decision for the purpose of "enlightening the conscience of the chancellor." Alabama, Tenn. & Northern Ry. Co. v. Aliceville Lumber Co., 199 Ala. 391, 74 So. 441, 445. The jury verdict was advisory merely and could have been rejected by the trial court. Lucas v. Scott, supra; Jones, Trial by Jury in Alabama, 8 Alabama Law Review, p. 274 (279). Inasmuch as the evidence was taken orally before the trial court as well as before the jury, there is a presumption in favor of the

court's finding in regard to matters about which there was a conflict in the evidence, although the court did adopt the advisory verdict of the jury.

■ The appellants, the respondents below, have made eight assignments of error, the first six of which are to the effect that the trial court erred in fixing the boundary line as claimed by the complainants and in not fixing it as advocated by the respondents. Assignments of error 7 and 8 relate to rulings of the trial court on admission of evidence, but they are not argued in brief of appellant and will not be considered. Romano v. Thrower, 261 Ala. 361, 74 So.2d 235.

■ The area in dispute is a strip of land about 25 feet wide in some places which extends east and west 1,320 feet according to the survey upon which the respondents rely, and 1,317 feet according to the survey upon which the complainants rely. In other words, the Turner line is approximately 25 feet north of the Espy-McVay line at the eastern termini of those lines, and it extends about 3 feet farther west than the Espy-McVay line.

The appellants contend in brief filed here that the evidence shows that they have title up to the Turner line by adverse possession, irrespective of the location of the true half-section line which divides the northern half of the section from the southern half. We are clear to the conclusion that the evidence does not show that the Whites have acquired title to the disputed area by adverse possession. In fact, adverse possession was not an issue in this case. Under the averments of the respondents' amended answer, it is clear that they were contending that the Turner line was in truth and in fact in accordance with the government survey. That the trial court understood from the pleadings and the evidence that the controversy was over the location of a line determined by the government survey is shown by the following statement made in the court's oral charge, to which the respondents did not except: "Now, gentlemen, these par-

ties in this case, the Berreys on the one hand and the Whites on the other, contend that this dividing center line, the center line of Section Thirty-one, is the one that is in dispute, and each side has offered to you evidence in support of his contention." At the request of the complainants the trial court gave the following written charges, the giving of which is not assigned as error by the respondents below, the appellants here:

"1. I charge you that the issue in this case is the correct location of the boundary line between the SE¼ of NE¼ and the NE¼ of SE¼ of Section 31, Township 8 North, Range 1 East and that to determine the proper location of this boundary line it is necessary that you determine the proper location on the east line of the section of the half-section corner, located half way between the northeast corner and the southeast corner of the section.

"12. I charge you that the only issue to be decided by you in this case is the correct boundary line between the SE¼ of NE¼ and the NE¼ of SE¼ of Section 31, Township 8 North, Range 1 East, according to the original government survey."

The reading of this record convinces us that the trial court correctly stated that the issues formulated under the pleadings and evidence called simply for the location of the line as determined by the government survey, nothing more, and that the matter of adverse possession was not in issue. Mixon v. Pennington, 204 Ala. 347, 85 So. 562; Forrester v. McFry, 229 Ala. 324, 157 So. 68, and cases cited; Mintz v. Millican, 248 Ala. 683, 29 So.2d 230.

■ The half-section line here in dispute was not established by the government survey, the corners of the half and quarter sections not being marked on that survey.

It is provided in Title 43, U.S.C.A., § 752 that "the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant

from two corners which stand on the same line." To comply with those provisions it is necessary to locate the northeast corner and the southeast corner of said Section 31 and find a point equidistant from each of them. Nolen v. Palmer, 24 Ala. 391; Dougherty v. Hood, 262 Ala. 311, 78 So.2d 324; O'Rear v. Conway, 263 Ala. 466, 83 So.2d 65.

The northeast corner of the section is marked with a concrete marker, which was accepted as a correct government marker by both the complainants and the respondents and by their surveyors.

The northwest corner of said Section 31 was formerly marked by a "lightwood knot" and is now marked with a concrete marker. This corner was recognized by adjoining landowners and has been generally used for surveys in the area. Turner, upon whose survey the respondents rely, encountered this concrete marker and seems to have accepted it as the correct northwest corner of the section.

The southwest corner of the section is marked by an iron pin which has been accepted as the corner for surveys by county surveyors and has been recognized by adjoining landowners for many years. One of the landowners testified that the southwest corner has been so marked for at least fifty-four years. Apparently the respondents' surveyor, Turner, accepted the iron pin as marking the southwest corner of the section.

The location of the southeast corner of the section is in dispute. The complainants contended that the correct location of that corner was at the point where a square concrete "corner" was placed at the spot where an iron pin had been previously located. One surveyor testified that the iron pin or pipe marked the southeast corner of said Section 31 when he started surveying some forty or forty-five years before this case was tried. One surveyor testified to the effect that the corner as presently marked by the concrete "corner" had been used by them as the correct government survey corner in the making of

surveys in that vicinity for a number of years. Several adjoining landowners gave evidence to the effect that the iron pin, now replaced by the concrete post, has been recognized as the correct corner for many, many years.

There was testimony offered on behalf of the respondents to the effect that the correct corner is 40 or 50 feet north of the place where the concrete post now stands. The witnesses so testifying claim that the iron pin or pipe had been located at the point they claimed to be the corner and had never been located at the place where the concrete post is now situated.

Surveyors Espy and McVay accepted the concrete post as correctly marking the southeast corner of the section. As shown above, the location of the northeast corner was not in dispute. The distance from the accepted northeast corner to the concrete post was shown to be 5,330.8 feet. So applying the prescribed formula, Espy and McVay placed the eastern terminus of the half-section line at a point 2,665.4 feet south of the accepted northeast corner and 2,665.4 feet north of the concrete post which they determined to be the southeast corner of the section.

The field note distance on the eastern line of Section 31 is only 5,263.5 feet, so the Espy-McVay survey gives overage to that line of approximately 67 feet. But the evidence tends to show that Section 31 "is like almost every section, the field notes distance is not as great as the measurement now. The actual distance on the ground is usually greater than the field note distance in almost every section." The distances between the corners which are admitted to be correct do not comply with the field notes. All of the surveyors, including the respondents' surveyor, Turner, testified that there was an excess measurement on each of the three sides where all of them accepted the corners, that is, the north line, the west line, and the south line.

Yet in fixing the boundaries between the parties to this litigation, Turner determined that the correct southeast corner was 79

chains and 75 links or 5,263.5 feet south of the northeast corner as called for by the field notes, although he found no marker of any kind at that point. In fact, the point which he fixed as the southeast corner of the section was about 20 feet north of the point where some of the adjoining land-owners who testified in behalf of the re-spondents claimed the iron pin to have been located. Turner fixed the eastern terminus of the half-section line at a point on the east line 40 chains or 2,640 feet south of the accepted northeast corner.

We feel that the pivotal point in this case is the correct location of the southeast corner of said Section 31. As heretofore shown, the evidence was in conflict on that question. However, we think the jury and the trial court, under the evidence presented, was justified in finding under the pleadings in this case that the southeast corner was located as claimed by the complainants and in finding that the correct boundary line between the parties to this litigation was as fixed by the Espy-McVay survey. The trial court so decreed. We are of the opinion that that decree should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and COLEMAN, JJ., concur.