THOMPSON, Presiding Judge.
On March 30, 2006, David Ray Coley and Sandra D. Coley sued coterminous landowners Billy Fain, Alice F. Fain, and Nancy Miller (hereinafter referred to collectively as “the defendants”) seeking to establish the boundary between the property of the Coleys and the properties owned by the defendants. The defendants answered, asserting adverse possession as a defense. The trial court conducted an ore tenus hearing over the course of two days. On February 4, 2008, the trial court entered a judgment in favor of the defendants. The Coleys filed a postjudgment motion, which the trial court denied. The Coleys timely appealed, and our supreme *826 court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The Coleys own a parcel of property (hereinafter “the Coley property”) comprising approximately 20 acres in Etowah County near the Cherokee County border. Nancy Miller owns approximately five acres of property adjoining a portion of the western boundary of the Coley property. Billy Fain and Alice F. Fain own a 40-acre parcel of property south of Miller’s property and adjoining the part of the western border of the Coley propei'ty not adjoined by Miller’s property. The property in dispute is a wedge of property that originates at the northernmost part of the border between the Coley property and Miller’s property, and is approximately 60 feet in width at its widest point at the southernmost portion of the Coley property and the Fains’ property.[1]
The trial court summarized the common boundary of the parties’ properties, as set forth in their deeds, as the section line that is “the east line of the SW 1/4 of the NE 1/4 of Section 2, Township 12 South and Range 8 East, and the west line of the SE 1/4 of the NE 1/4 of Section 2, Township 12 South and Range 8 East, lying and being in Etowah County, Alabama.” A great deal of the evidence presented to the trial court concerned the proper location of the section line that forms the boundary described in the parties’ deeds.
The parties submitted into evidence surveys supporting their claims, as well as a 2007 survey performed by the court-appointed surveyor, Jerry Dowdy. In support of their claim, the Coleys submitted into evidence a survey performed by Charles Young in 2000, and they also relied on the 2007 Dowdy survey. The location of the section line as determined in the 2000 Young survey was the same as that identified in the 2007 Dowdy survey. For the purposes of this opinion, we refer to the section line as determined by the 2000 Young survey and the 2007 Dowdy survey as “the Dowdy line.” The Dowdy line lies west of the boundary claimed by the defendants either through their assertion of the proper location of the section line that formed the parties’ boundary or pursuant to them alternative claim of adverse possession.
We note that the 2000 Young survey also documented the location of the boundary line claimed by the defendants as one established in an earlier survey by a surveying firm identified as “Jones, Blair, Tucker and Waldrup.”[2] That same line is designated in the 2007 Dowdy survey by a line composed of dashes and breaks that the parties referred to as “the hash line.” For the purposes of this opinion, we refer to the line advocated by the defendants, as it is set forth in the 2000 Young survey and the 2007 Dowdy survey, as “the hash line.” The hash line lies to the east of the Dowdy line. The area bordered by the Dowdy line on the west and the hash line *827 on the east is the wedge of property in dispute.
In 2007, at the request of the defendants, M.B. Waldrup, Jr., a partner in the firm of Jones, Blair, Waldrup and Tucker (“JBWT”),[3] performed a “specific purpose” survey (“the 2007 JBWT survey”) of the property in dispute. The 2007 JBWT survey documented what Waldrup contended was the proper boundary between the parties’ properties, and it documented the location of the boundary claimed by the Coleys. Based on the results of earlier JBWT surveys of the surrounding area and the measurements obtained by his field crew, Waldrup determined the section line that forms the boundary of the parties’ properties to be to the east of the Dowdy line, in approximately the same position as the hash line from the 2007 Dowdy survey.
In addition to the disputed evidence pertaining to the proper location of the section line that the parties’ deeds identify as the common boundary of their properties, the parties also presented evidence regarding their alleged uses of the property in dispute. The defendants expressly asserted a claim of adverse possession of the disputed property. The Coleys did not assert a claim of adverse possession in their complaint. However, as discussed below, the Coleys presented evidence tending to indicate that they had possessed the property in dispute. Accordingly, we conclude that, given the evidence the Coleys presented, a claim of adverse possession of the property in dispute by the Coleys was litigated by the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P. (“When issues not raised by the parties are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”).
In essence, the Coleys attempted to establish that they and their predecessors in interest had possessed the property in dispute. The defendants presented evidence in support of their claim that they had traditionally exercised possession of the property in dispute to the line established in the 2007 JBWT survey (also represented by the hash line in the 2007 Dowdy survey).
The trial court’s February 4, 2008, judgment states:
“This matter came before this court on [the Coleys’] Complaint to Quiet Title or To Establish Boundary Line, and the answers of the Defendants. After hearing ore tenus [evidence] and a personal inspection of the disputed boundary, which was done at the request of the [Coleys] and in the company of the respective attorneys of the parties, the Court makes the following order:
“1. The Court finds that the Defendants each share a common boundary on the east side of their properties with the west side of the [Coley property],
“2. The Court finds this common boundary line has been shared by either the parties, or relatives of the parties, for over forty years next preceding the filing of the complaint in this case.
“3. The boundary line in question is the east line of the SW 1/4 of the NE 1/4 of Section 2, Township 12 South and Range 8 East, and the west line of the SE 1/4 of the NE 1/4 of Section 2, Township 12 South and Range 8 East, lying and being in Etowah County, Alabama.
“4. The Court finds in favor of each of the Defendants and against the [Coleys]. The Court finds that by both prescription and adverse possession, the Defendants, and their relatives, have ex *828 ercised control over the land in dispute for more than forty years.
“5. The Court finds that the axle in the ground, as shown by the Jones, Blair, Waldrup and Tucker, Inc., survey of October 3, 2007, is the true and correct Northeast Corner of the SW 1/4 of the NE 1/4 of Section [2], Township 12 South, Range 8 East, based on the evidence presented at trial.
“6. The Court finds that the boundary line is hereby described as follows:
“Begin at NE corner of the SW 1/4 of the NE 1/4, which corner is located at an axle in the ground on the north line the south half of the NE 1/4, and continue southward in a straight line along the east line of the SW 1/4 of the NE 1/4 until you reach the SE corner of the SW 1/4 of the NE 1/4, which corner is located at an axle in the ground on the south line of the south half of the NE 1/4, all being in Section [2], Township 12 South, Range 8 East of the Huntsville Meridian, in Etowah County, Alabama.” [4]
The boundary described in paragraph 6 of the trial court’s judgment is the line set forth in the 2007 JBWT survey and represented by the hash line in the 2007 Dowdy survey.
On appeal, the Coleys argue that the trial court erred in reaching its judgment because, they claim, the trial court’s judgment purports to relocate a section line established by the United States Survey. Without reaching that argument at this time, we conclude that the argument reveals an internal inconsistency in the trial court’s judgment.
Boundary lines between coterminous landowners may be altered by an agreement or by adverse possession; however, section lines established by the United States government may not be relocated. Mims v. Alabama Power Co., 262 Ala. 121, 124, 77 So.2d 648, 651 (1955); see also Sims v. Sims, 273 Ala. 103, 134 So.2d 757 (1961) (government-established section lines may not be relocated by acts of the parties); and Upton v. Read, 256 Ala. 593, 594, 56 So.2d 644, 645 (1952) (recognizing caselaw as establishing the proposition that “no act of the parties can relocate the section line as established by government survey”).
In Sims v. Sims, supra, the common boundary between the parties’ property was a section line; two surveyors presented conflicting evidence regarding the location of that section line. The trial court determined the disputed boundary, and, thereby, the location of the section line, and our supreme court affirmed, concluding that the evidence supported that judgment. In so holding, the court noted that, in that case, the claim pertained to the proper location of the section line and that the parties were not claiming any right to the property across or beyond the section line. Sims v. Sims, 273 Ala. at 105, 134 So.2d at 759.
In Guyse v. Chappell, 367 So.2d 944 (Ala.1979), our supreme court again recognized that a government-established section line that forms the boundary between parties’ properties may not be altered or relocated. However, the court then explained that when a party claims title beyond the section line by adverse possession, “the boundary line between the landowners [may be] changed so that *829 the government survey line is no longer the location of the boundary.” Guyse v. Chappell, 367 So.2d at 946.
Thus, a party may establish title through adverse possession beyond a section line established by a government survey. Guyse v. Chappell, supra; see also Nelson v. Garrard, 403 So.2d 230 (Ala. 1981). Our supreme court has explained:
“An examination of our cases establishes that parties may not vary the location of government survey lines by agreement or by act. See Guyse v. Chappell, 367 So.2d 944 (Ala.1979); Sims v. Sims, 273 Ala. 103, 134 So.2d 757 (1961). Nevertheless, a party who holds property by adverse possession for the statutory period may claim title even though possession is over the boundary line. See Mardis v. Nichols, 393 So.2d 976 (Ala. 1981); Guyse v. Chappell, 367 So.2d 944 (Ala.1979); Oliver v. Oliver, 187 Ala. 340, 65 So. 373 (1914).”
Nelson v. Garrard, 403 So.2d at 232 (affirming that part of the trial court’s judgment determining that the Garrards and their predecessors in title had obtained, by adverse possession, title to property lying across a section line); see also Sims v. Vandiver, 504 So.2d 250, 252 (Ala.1987) (in which the supreme court held that trial court’s judgment had “relocated the boundary line according to the evidence presented at trial, but did not relocate the government survey line”).
In this case, the trial court was asked to determine the location of the section line that the parties’ deeds describe as the boundary of their properties and then to determine whether the boundary between the parties’ properties was different from the location of the section line due to one parties’ adverse possession of the disputed property. As previously explained, the trial court, pursuant to a finding of adverse possession, may establish a boundary between the parties’ properties other than the section line. Guyse v. Chappell, supra. The section line referenced in the deeds may be established through the surveys and the evidence presented by the surveyors, but the trial court may not determine the location of or relocate a section line pursuant to a finding of adverse possession. Mims v. Alabama Power Co., supra; Upton v. Read, supra.
In this case, the trial court’s judgment states that the “boundary line in question is” the section line described in the parties’ deeds, and then, in setting forth the location of that line, it states that it found in favor of the defendants on their adverse-possession claim. Thus, the trial court might have concluded that the location of the section line/boundary of the parties’ properties as referenced in their deeds was the line advocated by the defendants and set forth in the 2007 JBWT survey and that the defendants had, over the years, possessed the property to that line to the exclusion of the Coleys. However, the judgment may also be interpreted as impermissibly establishing the section line based on a finding that the defendants had adversely possessed the property to the line described in the judgment. Thus, there is an inconsistency in the trial court’s judgment.
Therefore, we reverse the judgment and remand the cause to the trial court to clarify its judgment to specify the location of the section line in dispute and to determine whether, pursuant to a finding of adverse possession, the location of the boundary between the parties has changed such that it is no longer the section line referenced in the parties’ deeds. Because we are reversing the judgment and remanding the cause to the trial court for a clarification of that judgment, we preter- *830 mit resolution of the other issues raised on appeal.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.
THOMAS, J., dissents, with writing.

. For the purposes of tlris opinion, we (as did the parties before the trial court) have referred to the southern property line of the Coley property and the Fains' property as being the same. In fact, a portion of the southern property line in question is no longer the southernmost portion of the Fains’ property. Terry Alford owns the property to the south of the Coley property and the property owned by the Fains. In 1970, when Alford purchased his property, the Fains purchased from Alford a small strip of that properly on which the Fains had parked cars and farm equipment; that strip of property does not appear to run the entire length of what had originally been the southern boundary of the Fains' property. The boundary of that strip of properly is not at issue in this matter.

. That same firm is referenced in other evidence submitted to the trial court as being titled "Jones, Blair, Walker and Tucker.”

. See note 2, supra.

. Paragraphs 5 and 6 of the February 4, 2008, judgment actually specify the section in which the property is located as "Section 12.” Other references in the judgment and in the record clearly demonstrate that the references in paragraphs 5 and 6 of the trial court's February 4, 2008, judgment to "Section 12” are typographical errors.