77 So.2d 648

**Glennie T. MIMS**

**v.**

**ALABAMA POWER COMPANY et al.**
**5 Div. 594.**

Supreme Court of Alabama.

Jan. 20, 1955.

Karl C. Harrison, Columbiana, Glen T. Bashore, Clanton, for cross-appellants.

Martin & Blakey, Alvin W. Vogtle, Jr., Birmingham, for appellee Alabama Power Co.

Grady Reynolds, Reynolds & Reynolds, Clanton, for cross-appellee O. L. Mims.

MERRILL, Justice.

This is an appeal from a decree establishing a disputed boundary line, which was the relief prayed for in the cross bill of the appellee, Alabama Power Company. The appellant, Mrs. Glennie T. Mims, was permitted to intervene subsequent to the rendition of the final decree for the purposes of appealing to this court.

On August 16, 1941, the respondents Thompson and Smith purchased the timber on 259 acres of land west of the Coosa River including part of the NE¼ of Section 25, Township 23 N, Range 15 E in Chilton County from complainant O. L. Mims, and gave a mortgage to him for $500, the unpaid balance of the purchase price. On December 9, 1941, O. L. Mims filed the original bill in this cause to foreclose the mortgage. Thompson and Smith answered that O. L. Mims had pointed out certain lands to them as belonging to him and being bounded on the north by Yellow Leaf Creek, but the Power Company had notified them that it owned lands south of Yellow Leaf Creek and that they had cut timber belonging to the Power Company; that they deposited $279.00 in Peoples Savings Bank of Clanton to be paid to O. L. Mims when he secured a release from the Power Company. They further asked that the Power Company be made a party to the proceeding so it could be determined what amount of money was due O. L. Mims and the Power Company for the timber cut off the lands in dispute.

The answer and cross bill of the Power Company alleged that the line in dispute was the line between Sections 24 and 25; that it owned the fractional S½ of the fractional SE¼ of Section 24 and O. L. Mims owned the property immediately south, to-wit: part of the NE¼ of Section 25, and that the correct boundary line between the

two sections was 1339 feet south of the point where Yellow Leaf Creek empties into the Coosa River, and 903.8 feet south of the point where Yellow Leaf Creek intersects the west line of the SW¼ of fractional SE¼ of Section 24. (Yellow Leaf Creek flows in an easterly direction across the S½ of S½ of Fractional Section 24.) In its cross bill the Power Company prayed that the court settle the boundary line dispute.

O. L. Mims answered the cross bill, admitting that the Coosa River was the eastern boundary of Sections 24 and 25, and that the Power Company had purchased its lands in 1912 from one W. R. Mims and that G. D. Mims, the father of O. L. Mims was the predecessor in title to him, O. L. Mims. He averred that Yellow Leaf Creek ran along the section line and was the line between Sections 24 and 25; but he claimed in the alternative that W. R. Mims and G. D. Mims had agreed in 1900 that the creek would be the dividing line between the sections and each had been in the open, notorious, adverse and hostile possession of the lands on the north and south sides of Yellow Leaf Creek, respectively, for more than 20 years, and therefore the Power Company owned only that land north of the creek and he owned the lands to the south of it. He later filed an amendment showing that on September 16, 1947, he sold his lands immediately south of the Power Company lands to Glennie T. Mims, but that the Power Company was still seeking to recover a strip of land approximately 900 feet wide, south of the Creek to which it was not entitled.

Testimony was taken at various intervals during the eleven years of litigation but after submission in June 1952 the court rendered a final decree in July 1952, fixing the boundary line as contended for by the Power Company. It further decreed that O. L. Mims was entitled to recover of Thompson and Smith $166.80 as the balance due on the mortgage together with interest at six percent from September 1, 1941, to the date of the decree and a solicitor's fee to be paid out of the fund of $279 which had been deposited in the bank. The Power Company had waived any claim for damages for the timber cut and attorneys' fees.

Subsequent to the rendition of the final decree, appellant Glennie T. Mims was allowed to intervene upon allegation and proof that she had become, during the pendency of the cause, owner of all the property previously belonging to O. L. Mims. We have held that a final decree is not a bar to a subsequent petition to intervene and such a petition is the appropriate method for becoming a party to the cause for the purpose of appealing. Ex parte Ide, 228 Ala. 452, 153 So. 887.

Our recent case of McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160, not announced when this case was submitted, is in point as to several questions presented.

The third, sixth and eighth assignments of error are to the effect that the trial court erred in denying complainant's application for rehearing. The decree denying the rehearing is not subject to review on this appeal. McNeil v. Hadden, supra.

All other argued assignments of error assert that the trial court erred in establishing the boundary line at the location described in the decree, i. e., approximately 1000 feet south of Yellow Leaf Creek.

The first question for our determination is the location of the section line between Sections 24 and 25. In this state all disputes as to lines of sections and subdivisions thereof are to be governed by the United States Survey and located by reference to the original government survey. Taylor v. Fomby, 116 Ala. 621, 22 So. 910; Billingsley v. Bates, 30 Ala. 376.

The evidence was overwhelmingly convincing that the line dividing Sections 24 and 25 lay south of Yellow Leaf Creek and that the line established by the court agreed with the original government survey. "And while the boundary line between adjacent landowners may be fixed and changed by agreement or by adverse possession, they cannot relocate a section line as surveyed by the government surveyors." McNeil v. Hadden, supra [261 Ala. 693, 76 So.2d 162].

That brings us to the contention that the predecessors in title of the Power Company and O. L. Mims had agreed to make Yellow Leaf Creek the line between their properties in 1900 and that G. D. Mims, predecessor in title of O. L. Mims, had acquired title to that disputed part of Section 24 lying south of the creek by adverse possession. This contention can avail appellant nothing. It is agreed that the Power Company has paper title to the lands in Section 24 and appellant has paper title to the adjacent lands in Section 25. Therefore, O. L. Mims and his successor cannot tack on any adverse possession of O. L. Mims' predecessor in title, because their deeds describe only lands in Section 25, and even though title to the land in Section 24 south of the creek may have been in O. L. Mims' predecessor, it could pass to O. L. Mims "only by a conveyance wherein the said strip is sufficiently described or by the status of adverse possession for the required length of time" by O. L. Mims subsequent to the conveyance from his predecessor. McNeil v. Hadden, supra, and cases cited therein.

Appellant's next contention is that O. L. Mims acquired title to the lands in Section 24 south of Yellow Leaf Creek by adverse possession. In Spradling v. May, 259 Ala. 10, 65 So.2d 494, 498, we said:

"Where one claims title to land through an unbroken chain of record title against another who relies upon adverse possession under color of title, the rule is well established. A very strict burden to establish his title rests upon the one claiming by adverse possession.

"The law places such a high dignity upon a regular documentary title and requires such strict formalities to evidence it that a necessary concomitant is that in order to work a divesture of that title by adverse possession, all the essential elements must be proven by the stated measure of proof, and that proof must show that there has been an actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period under claim of right of the definite tract involved.

"Following are some of the authorities: Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705; Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483, 170 A.L.R. 882; Barbaree v. Flowers, 239 Ala. 510, 196 So. 111; Murphy v. Leatherwood, 221 Ala. 61, 127 So. 843; McDaniel v. Sloss-Sheffield Steel & Iron Co., 152 Ala. 414, 44 So. 705; Chastang v. Chastang, 141 Ala. 451, 37 So. 799."

The evidence to support this contention falls far short of that required to prove adverse possession. O. L. Mims lived outside of Chilton County from 1919, two years after he acquired title to the lands in Section 25, until 1951, and his claim of adverse possession had to be based on the acts of his tenants. We are convinced from the evidence that the acts of these parties are not sufficient to show possession against the true owner so as to ripen into title by adverse possession.

The cross appellants, Thompson & Smith, assign as error that part of the decree which rendered a judgment against them for $166.80, the balance due on the note with interest at six percent thereon from the first of September, 1941, to the date of the decree. Another cross assignment of error is the allowance by the trial court of an attorney's fee of $125 to the solicitor for O. L. Mims to be paid out of the $279.00 deposited with the bank by Thompson & Smith. This $279 has been the subject of a garnishment proceeding by O. L. Mims in this cause. The other cross assignment of error is the trial court's failure to allow an attorney's fee to the attorneys of record of Thompson & Smith.

The cross assignments of error relating to the judgment of $166.80 and the awarding of the solicitor's fee to the attorney of O. L. Mims are not argued in brief and are, therefore, waived. Morgan v. Cherokee County Board of Education, 257 Ala. 201, 58 So.2d 134; Propst v. Brown, 250 Ala. 282, 34 So.2d 497; Wetzel v. Hobbs, 249 Ala. 434, 31 So.2d 639.

The question of the propriety of the award of interest in this case is controlled

126

by the provisions of Code of 1940, Title 7, § 1012. The decree provided that the interest was to be paid from the $279 on deposit with the garnishee, the Peoples Savings Bank of Clanton. The record does not reveal that any effort was made on the part of the bank as garnishee to avail itself of the provisions of § 1012 and we conclude that the trial court correctly allowed interest on the judgment of $166.80. Murphy v. Merchants National Bank of Mobile, 240 Ala. 688, 200 So. 894.

■ Attorneys for the cross appellant insist that they are entitled to a fee for their services for filing "their bill of interpleader" under Equity Rule 36, Code 1940, Tit. 7 Appendix. However, we do not construe the answer and position taken by Thompson & Smith as that of a disinterested stakeholder, because they did not pay the money into court, but attached a condition that Mims must secure a release from the Alabama Power Company before the Bank would be authorized to pay the money to him; they denied all the claims of the Power Company to the land in question and throughout the cause they were in the position of defending the Power Company's claim for damages in the amount of $250 for the cutting of the timber.

■ Clearly they were not mere interpleaders in this action and their attorneys have no claim for fees under Equity Rule 36. Pratt v. First National Bank of Fayette, 243 Ala. 257, 9 So.2d 744; First National Bank of Mobile v. Burch, 237 Ala. 680, 188 So. 859; Riddick v. American Employers Ins. Co., 236 Ala. 323, 182 So. 45. A presumption exists in favor of rulings of the trial court fixing attorneys' fees and such rulings will not be set aside unless abuse of discretion is apparent. King v. Keith, 257 Ala. 463, 60 So.2d 47.

The decree of the trial court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.