Russell Dial appeals from a judgment establishing a boundary line between his property and property owned by Jack Bond, a coterminous landowner. We affirm.
Dial has title to the east half of the northeast quarter of section 15, Township 18 north, Range 4 west. Bond has title to the northwest quarter of section 14, Township 18 north, Range 4 west. Both men acquired their property by deed and by will from family members.
Dial sued Bond, contending that the boundary line between their properties is not the United States government survey line between sections 14 and 15, but some point to the east of an old fence that runs generally parallel to the section line. Dial claims that the parties and their predecessors in title have, for decades, recognized the fence or a point east of the fence as the true boundary line. After an ore tenus proceeding, the trial court determined that the boundary line was the section line *Page 190 
running north and south between sections 14 and 15. Dial appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
All conveyances describe the parcels by reference to sections and quarter-sections. None of the descriptions in either party's title documents refers to an "old fence." Dial presented a witness, Barry Tew, whose testimony indicated that Robert Bond, Jack Bond's predecessor in title, had recognized a fence, or some point east of a fence, as the boundary line between his property and Dial's property.
Barry Tew testified that he had cut timber for Robert Bond in the 1970's. He said that Mr. Bond had instructed him to cut up to a fence that divided the Bond property from the Dial property. Tew testified that he had complied with those instructions; he said that after the timber was cut, Coleman Dial, who was Russell Dial's predecessor in title, complained to Mr. Bond that, along a certain strip, the boundary line was east of the fence and that, by cutting to the fence, Tew had cut "over the line on him." Tew stated that, in 1975, Robert Bond had agreed to reimburse Coleman Dial for the timber that was cut "over the line." The trial court admitted a document reflecting that agreement. On cross-examination, Tew acknowledged that he did not know whether the 1975 agreement concerned the property that is the subject of the present dispute or whether it concerned property adjoining the disputed areas to the north in sections 10 and 11. The survey map included in the record indicates that, in the northern portion of section 15, as well as in the southern portion of section 10, the section line is to the east of the old fence. Dial presented no evidence as to the location of the strip as to which Robert Bond reimbursed Coleman Dial for cutting Dial's timber. Dial also presented no evidence indicating that either he or his predecessors in title had adversely possessed the property up to the fence or to a line east of the fence — the line that he claims is the boundary.
Bond presented evidence indicating that the parties' predecessors in title had agreed to accept a 1984 survey showing that the boundary line between their properties was the section line. Dial testified that his predecessor in title had not assented to the boundary line shown on the survey.
The trial court entered the following findings of fact and conclusions of law:
 "1. [Dial] has presented no evidence as to the location of any alternate boundary between the property he owns, to-wit: the E ½ of the N.E. 1/4 of Section 15, Township 18 North, Range 4 West, and the property owned by . . . Jack Bond, to-wit: the N.W. 1/4 of Section 14, Township 18 North, Range 4, all being located in Sumter County, Alabama, other than the Quarter Section Line which is the East-West boundary between Sections 15 and 14, Township 18 North, Range 4 West.
 "2. [Dial] has presented no evidence that there is a boundary line between the property of [Dial] and [Bond] as described above which `lies adjacent to and East of an old fence line.' [Dial] has presented no evidence that any boundary line lying adjacent to and East of an old fence line exists or has been recognized by the parties or their predecessors in title.
 "3. The Court finds that the boundary line in question has been in place along the Quarter Section Line running North and South for more than ten (10) years and in fact, at least since 1984 and *Page 191 
is a well marked and recognized and agreed to boundary line.
 "4. The Court further finds that this line was surveyed by agreement of the parties and that the survey line running North and South on the Quarter Section Line has been marked and has been recognized as the boundary line between the parties for more than ten (10) years.
 "Based on the foregoing findings of fact, the Court is of the opinion that Judgment should be entered accordingly. It is, therefore, ORDERED, ADJUDGED, AND DECREED that the boundary line between [Dial's] property . . . and [Bond's] property . . . is the North-South Quarter Section Line dividing Sections 15 and 14, Township 18 North, Range 4 West."
The trial court's findings of fact are supported by the evidence in the record.
 "It is well established that when a trial court, after ore tenus proceedings, enters a judgment setting a boundary line between coterminous landowners, that judgment is presumed correct if it is supported by credible evidence. Valentine v. Ireland, 580 So.2d 581
(Ala. 1991)."
Henderson v. Dunn, [Ms. 2991235, November 16, 2001] ___ So.2d ___, ___ (Ala.Civ.App. 2001). Although Dial presented evidence indicating that the parties' predecessors in title had agreed that the boundary line between their properties was an old fence or a point east of the fence, the trial court apparently chose not to credit that testimony. Moreover, even if the trial court had believed that the parties' predecessors had agreed that the boundary line was an old fence (or something other than the section line), it would not, without more, have been authorized to establish the boundary line between these parties as something other than the section line. See Mims v. Alabama Power Co., 262 Ala. 121, 77 So.2d 648
(1955); McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160 (1954); Alford v.Rodgers, 242 Ala. 370, 6 So.2d 409 (1942).[1]
In Alford v. Rodgers, a deed established the northern boundary of the plaintiff's land, which was wholly situated in section 14, as the section line between sections 14 and 11. The plaintiff, however, had claimed property up to a road in section 11. The court held that when the plaintiff conveyed the land by the same description under which he had purchased it, the conveyance did not include the land between the section line and the road in section 11. The court stated:
 "It is of course true that no act or even agreement of the parties can take the land out of section 11 and put it in section 14. And while the boundary line between adjacent land owners may be fixed and changed by agreement or by adverse possession, they cannot relocate a section line as surveyed by the Government surveyors. So that if the land was in section 11 as thus surveyed, it has so remained and still is thus situated. . . . It follows that a conveyance of land described as in section 14 does not on its face include land in section 11."
Alford v. Rodgers, 242 Ala. at 373, 6 So.2d at 410 (quoted in McNeil v.Hadden, 261 Ala. at 693, 76 So.2d at 162, and Mims v. Alabama Power Co.,262 Ala. at 124, 77 So.2d at 651). "[W]hen the land is described by Government numbers, the deed does not purport to convey an area outside of such described land." Alford v. Rodgers, 242 Ala. at 373,6 So.2d at 411. *Page 192 
In Mims v. Alabama Power Co., the section line was south of Yellow Leaf Creek, but the parties' predecessors in title had agreed that the creek would be the dividing line between their properties. The court held that such an agreement could
 "avail [the parties] nothing. . . . [B]ecause their deeds describe only lands in Section 25, and even though title to the land in Section 24 south of the creek may have been in [one party's] predecessor, it could pass to [the party] `only by a conveyance wherein the said strip is sufficiently described or by the status of adverse possession for the required length of time.'"
262 Ala. at 125, 77 So.2d at 651 (quoting McNeil v. Hadden,261 Ala. at 695, 76 So.2d at 163).
The judgment of the circuit court is affirmed.
AFFIRMED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
Murdock, J., concurs in the result.
[1] The decisions in Mims, McNeil, and Alford have been implicitly limited by Watson v. Price, 356 So.2d 625 (Ala. 1978), insofar as those decisions concern the tacking of periods of adverse possession by successive property owners. In the present case, there was no evidence of adverse possession and no reliance on tacking.