PITTMAN, Judge.
 

 The North Clarke Water Authority (“the Authority”) appeals from a judgment purporting to grant Robert Dockery’s request to quiet title to a certain parcel of property located on or near the section line that serves as the boundary line between Mar-engo and Clarke Counties. Because the trial court did not receive evidence as to the location of the section line in relation to the disputed property, we must reverse the judgment and remand the ease for further proceedings.
 

 On April 3, 2006, Dockery filed a complaint seeking a judgment to quiet title to a specific parcel of land in Marengo County described as being located “in Lot C, Section 20, Township 12 North, Range 2 East, and lying east of County Road 71, containing 3.8 acres, more or less.” The Authority filed a motion to dismiss; that motion was denied on May 25, 2006. Subsequently, the Authority filed an answer denying Dockery’s claims and alleging that the action was more accurately described as a boundary-line dispute between adjoining landowners and not one to quiet title.
 

 On the second day of the trial in this •case, which took place between December 6-7, 2006, Dockery attempted to amend his complaint to add an ejectment claim, admitting that he did not have peaceable possession of the disputed property because a padlocked fence surrounded the Authority’s pumping station that was located on a portion of the disputed property. The Authority objected to Dockery’s request to amend his complaint, and the trial court sustained that objection. On May 14, 2007, the trial court entered a judgment that purported to quiet title to the disputed property in Dockery. About two weeks later, the Authority filed a post-judgment motion; that motion was denied by operation of law on August 24, 2007. Thereafter, the Authority filed a timely notice of appeal to the Alabama Supreme Court. The supreme court transferred the case to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 “In an action to quiet title, when the trial court hears evidence ore tenus, its judgment will be upheld unless it is palpably wrong or manifestly unjust.”
 
 Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass’n, Inc.,
 
 947 So.2d 1031, 1036 (Ala.2006). “However, the presumption of correctness does not attach to a trial court’s conclusions of law.”
 
 Id.
 
 A burden-shifting analysis applies to actions to quiet title under § 6-6-540, Ala. Code 1975. First, the plaintiff must prove “actual or constructive possession of the property and that [that] possession was peaceable, as distinguished from scrambling or disputed.”
 
 Cobb v. MacMillan Bloedel, Inc.,
 
 604 So.2d 344, 345 (Ala.1992). “Actual possession generally refers to the physical occupation of the land.”
 
 Woodland Grove,
 
 947 So.2d at 1037 n. 7.
 

 In this case, Dockery admitted at trial that he was not in peaceable possession of part of the disputed property.
 
 *636
 
 Thus, the trial court could not “quiet” title in Dockery pursuant to § 6-5-540. However, our review of the judgment cannot end at this point simply with a reversal, as urged by the Authority. The record reveals that the Authority defended Dock-ery’s action by asserting that the case was actually a boundary-line dispute between adjoining landowners. “When issues not raised by the pleadings are tried by express consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”
 
 See
 
 Rule 15(b), Ala. R. Civ. P.;
 
 see also Holifield v. Smith,
 
 [Ms. 2061204, July 11, 2008] - So.3d -(Ala.Civ.App.2008).
 

 The Authority presented evidence regarding the exact location of its pumping station, which the Authority claimed was situated entirely within Clarke County. On the other hand, Dockery offered evidence tending to indicate that the Authority’s pumping station encroached upon Dockery’s land, which he insisted was located solely within Marengo County.
 

 Both Dockery and the surveyor he hired, Glenn McCord, testified that Dock-ery’s land was located in Marengo County. The flaw in McCord’s approach is that he testified that he did not attempt to establish exact boundary lines, but only plotted Dockery’s land and its relative location to the surrounding Marengo County landowners’ tracts of land. Although McCord stated that he had researched Clarke County and Marengo County land records, he also testified that he had not actually surveyed the location of the Marengo-Clarke County line as part of his work. He merely opined that all Dockery’s land was located in Marengo County, without having plotted the section line relative to the disputed property.
 

 On the other hand, the Authority asserted that the portion of the disputed property on which it had built its pumping station was located solely in Clarke County and had never been part of Dockery’s Marengo County property. Thus, the true controversy in this case became a dispute concerning the proper location of the Mar-engo-Clarke County line, which was established by a government survey setting out the section line. Our review of the evidence and exhibits shows that neither Dockery nor the Authority offered any evidence of a government survey reflecting the exact location of the county line relative to the disputed property.
 

 The bulk of the testimony at trial concerned the location of a fence that had been placed on a portion of Dockery’s land when that parcel had belonged to Dock-ery’s predecessor in title. The documentary evidence offered by Dockery, which had been prepared by McCord, indicated that the fence was located south of the pumping station, thus indicating that the pumping station had been built on Dockery’s land. On the other hand, the documentary evidence offered by the Authority indicated that the fence ran more or less north of, and to one side of, the pumping station, thereby indicating that the station was not on Dockery’s land. Another document offered into evidence by the Authority also purported to show the Marengo-Clarke County line, i.e., the section line, relative to the pumping station, but that document was rejected by the trial court as not having been properly authenticated.
 

 “In this state all disputes as to lines of sections and subdivisions thereof are to be governed by the United States Survey and located by reference to the original government survey.”
 
 Mims v. Alabama Power Co.,
 
 262 Ala. 121, 124, 77 So.2d 648, 651 (1955). Although a boundary line between adjacent landowners may be fixed or changed by agreement or by adverse possession, neither process can “ ‘relocate a section line as surveyed by the
 
 *637
 
 government surveyors.’ ”
 
 Id.
 
 (quoting
 
 McNeil v. Hadden,
 
 261 Ala. 691, 693, 76 So.2d 160, 162 (1954)).
 
 [1]
 
 The trial court’s judgment, which purported to quiet title as to all property located north of the fence as drawn on Dockery’s documents, attempted to resolve the dispute based solely upon the location of the fence. We find no mention of the proper location of the boundary line between Marengo County and Clarke County relative to the adjoining landowners’ property as required by Alabama law.
 
 See Mims
 
 and
 
 McNeil, supra.
 

 Because the undisputed evidence indicated that all Dockery’s property was situated in Marengo County and all the Authority’s property was located in Clarke County, we conclude that the relative location of the fence, in relation to the disputed property, was immaterial to a proper determination of the county boundary line (section line) that serves as the boundary between the parties’ properties.
 
 See, e.g., Dial v. Bond,
 
 849 So.2d 189 (Ala.Civ.App. 2002) (trial court properly determined boundary between adjoining landowners was government survey line despite evidence indicating that old fence line was boundary).
 

 Although neither party requested that trial court order an independent survey of the county line and its exact location relative to the disputed property, we conclude that in order to make a proper determination of the boundary between the properties of the adjoining landowners, the trial court will need the parties to adduce evidence of the location of the section line in relation to the adjoining landowners’ properties. After such evidence is adduced— by reference to government surveys, the report and or testimony of an independent surveyor who has plotted the exact location of the section line relative to the two landowners’ properties, or by other equivalent means — the trial court will have sufficient evidence to determine whether the Authority’s pumping station has encroached over the county line and onto Dockery’s property.
 

 Because we must reverse the trial court’s judgment, we pretermit discussion of the remaining issues raised by the Authority in this appeal.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . Although the decisions in
 
 Mims
 
 and
 
 McNeil
 
 have been limited by
 
 Watson v. Price,
 
 356 So.2d 625 (Ala.1978), insofar as those decisions concern the tacking periods of adverse possession by successive property owners,
 
 Watson
 
 does not abrogate
 
 Mims
 
 or
 
 McNeil
 
 as to the determinative issue in this case,