DEBORAH HALLAL AND GEORGE HALLAL

VERSUS

WALTER H. EVERSMEYER, AND EAST
JEFFERSON GENERAL HOSPITAL

NO. 20-CA-263

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 742-834, DIVISION "M"
HONORABLE ROBERT J. BURNS, JUDGE PRO TEMPORE, PRESIDING

December 23, 2020

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Hans J. Liljeberg

<u>**AFFIRMED**</u>

**MEJ**
**FHW**
**HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
DEBORAH HALLAL AND GEORGE HALLAL
    Douglas D. McGinity

COUNSEL FOR DEFENDANT/APPELLEE,
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2, PARISH OF
JEFFERSON, STATE OF LOUISIANA D/B/A EAST JEFFERSON GENERAL
HOSPITAL
    Meghan E. Ruckman
    Charles O. Taylor

**JOHNSON, J.**

Plaintiffs-Appellants, Deborah Hallal and George Hallal seek review of the district court's February 13, 2020 judgment in favor of Defendant-Appellee, Jefferson Parish Hospital Service District No. 2 doing business as East Jefferson General Hospital ("EJGH"), which dismissed Plaintiffs' demand with prejudice at Plaintiffs' cost. Ms. Hallal allegedly tripped on an uneven sidewalk and fell into a glass door entrance of EJGH's Professional Building on her way to a medical appointment. Both Mr. and Mrs. Hallal sued EJGH for damages arising from Mrs. Hallal's subsequent injuries. We affirm the trial court's judgment for the following reasons.

*FACTS AND PROCEDURAL HISTORY*

On the afternoon of October 7, 2013, Deboral Hallal visited the EJGH Professional Building, located at 4315 Houma Boulevard, Metairie, LA, to visit her rheumatologist, Dr. Walter H. Eversmeyer[1]. Mrs. Hallal had been receiving treatment for polymyalgia rheumatic – an inflammatory disorder that causes pain and stiffness in the joints and shoulders – since 2011. Mrs. Hallal visited the building every three months to see her doctor. She usually used a different entrance, but decided to use the south side entrance on the west wall of the building because she had found a parking spot nearby on the day of the incident. Mrs. Hallal recalled, "I was just walking down there, and I saw this man, and I just kind of nodded at him, and then I was looking for the handle, and, I mean, I just fell into the door and hit it with my head." The glass door cracked upon impact. Mrs. Hallal "couldn't get up" and "didn't even know where [she] was."

The man Mrs. Hallal greeted, James Lanzetta, had been smoking a cigarette next to a nearby ash can. He witnessed the accident and offered assistance. Mrs.

---

[1] Dr. Eversmeyer was initially named as a defendant in the lawsuit but was subsequently dismissed.

Hallal sat on the ground for a minute, then walked to take the elevators to her rheumatologist's office, where she reported the incident. Office staff brought her an icepack for her head, but Mrs. Hallal declined further treatment at that time. At trial, the parties disagreed on the cause and the extent of Mrs. Hallal's injuries; however, both sides agreed that she sustained a black eye as a result of her fall.

Approximately three months later, Mrs. Hallal saw Mr. Lanzetta at the doctor's office. Mr. Lanzetta, a beginner amateur photographer, offered Mrs. Hallal photographs he had taken with a phone camera while on his knees of the spot where she had fallen. The photographs of the defective sidewalk and cracked glass door were admitted into evidence at trial. Mr. Lanzetta testified that, on the day of the accident, the weather was clear and sunny. He observed a one-and-one-half inch height differential "on the cement where the ground had sunk on one side and where she stepped crossing it and . . . when she stepped, that she [tripped] over that spot right where she was." He said that Mrs. Hallal "stumbled four or five feet from the place where she tripped into the door" and that she was "bleeding with a serious cut." Mr. Lanzetta had worked as a maintenance man at a few area facilities and said that he "[knew] about bad concrete" from installing sidewalks during Hurricanes Betsy and Camille. In Mr. Lanzetta's lay opinion, the sidewalk defect posed a dangerous and hazardous condition. Mr. Lanzetta admitted he had moved a piece of loose cement before taking the picture of the spot where Mrs. Hallal tripped.

The court also heard testimony from several employees of the hospital's Safety and Security Risk Management team and SRSA, EJGH's contractor responsible for security and building management. Those witnesses testified that that entrances of the building are checked at least two times a day. None of the witnesses had personal knowledge of when the sidewalk defect was repaired, but

the record shows it was repaired a month later. All facility personnel believed that they did not see the defect because there was no defect to see.

Mrs. Hallal testified that after her fall and doctor's appointment, she drove herself home but went to the hospital the evening of her fall complaining of pains in her nasal bridge, neck and right orbital. The results of her MRI and CAT scan did not preclude her from being discharged from the hospital – she also never lost consciousness. Mrs. Hallal testified that she suffers from headaches and neck pain periodically since the accident, but admitted that she fell a total of three times between October 7, 2013 and April 4, 2014. At trial, EJGH presented testimony that Mrs. Hallal's fall was more likely than not caused by pre-existing conditions rather than the defective condition of the sidewalk.

At the end of the three-day bench trial, the court concluded that Plaintiffs-Appellants failed to prove that an unreasonable risk of harm existed at the time of the accident by a preponderance of the evidence. The judge conceded that the Plaintiffs successfully defended against a motion for summary judgment before he began to preside over the case but reminded the parties that he had the benefit of observing the witnesses in person during live testimony while making credibility determinations. The court acknowledged that Mrs. Hallal was injured as a result of her fall but noted that the parties disputed the extent of those injuries. The judge then referred to Mrs. Hallal's testimony and found she "did not see what she should['ve] seen and was obligated to see." Although one of Appellants' expert witnesses opined that the sidewalk defect he observed in the pictures taken by Mr. Lanzetta and security personnel was a hazardous condition, the court noted that in *Chambers v. Vill. of Moreauville*, 11-898 (La. 1/24/12); 85 So.3d 593, the Louisiana Supreme Court found that a one-and-one-half inch deviation did not present an unreasonable risk of harm.

The trial judge also found that EJGH did not have active or constructive knowledge of the sidewalk defect. In his oral reasons for judgment, the judge credited the testimony of Clarence Millet, the hospital's director of facility management, called as a witness by both Plaintiffs and Defendant and qualified as an expert in building management by the court. Mr. Millet proposed the different colors of concrete may have been caused by pressure washing. He also testified that 2,500 people a month traverse the sidewalk while entering and exiting the building, but there has been no other complaint about the sidewalk defect. Mr. Millet explained that both the security detail and the property management company perform cursory inspections of the building, its entrances, and the surrounding area every single day, and no defects regarding the sidewalk were ever identified because "there was really nothing to be noticed." The district court judge concluded that "[Mrs.] Hallal unfortunately was distracted when she turned and nodded to [ . . . ] Mr. Lanzetta [ . . . ] and she slipped and fell into the glass." The trial court rendered a written judgment in favor of EJGH, referenced its reasons for judgment recited in open court on February 20, 2020, and dismissed Plaintiffs' case with prejudice. Appellants timely filed the instant appeal.

### ASSIGNMENTS OF ERROR

On appeal, Appellants assign the following district court findings as error: 1) the sidewalk defects did not create an unreasonable risk of harm; 2) EJGH did not have actual or constructive notice of the defects; 3) Plaintiffs did not meet their burden of proving EJGH failed to take corrective action within a reasonable time; and 4) that the sidewalk defects were not the cause in fact of Mrs. Hallal's injuries.

### LAW AND ANALYSIS

Under La. R.S. 9:2800, in order to prove a public entity is liable for damages caused by a thing, the plaintiff must establish: (1) custody or ownership of the defective thing by the public entity; (2) that the defect created an unreasonable risk

of harm; (3) the public entity had actual or constructive notice of the defect; (4) the public entity failed to take corrective action within a reasonable time; and (5) causation." *Barker v. City of Grand Isle*, 19-451 (La. App. 5 Cir. 1/8/20); 288 So.3d 286, 288, *writ denied*, 20-230 (La. 4/27/20); 295 So.3d 949 *citing Chambers*, *supra* at 597. The question of whether a defect presents an unreasonable risk of harm is a mixed question of law and fact that is to be determined by the trier of fact. *Lincoln v. Acadian Plumbing & Drain, LLC*, 17-684 (La. App. 5 Cir. 5/16/18); 247 So.3d 205, 210, *writ denied*, 18-1074 (La. 10/15/18); 253 So.3d 1302. A court of appeal may not set aside a trial court's factual findings absent manifest error, or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Where there is conflict in the testimony, a trial court's reasonable evaluations of credibility and inferences of facts should not be disturbed upon review, even if they differ from those of the appellate court. *Id.*

> The Louisiana Supreme Court has adopted a risk-utility balancing test to assist the fact-finder in determining whether the condition of a thing creates an unreasonable risk of harm that weighs four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature.

*Lincoln*, *supra*, *citing Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13); 113 So.3d 175, 178. The cost of repair, or preventing the harm, includes not just the relatively minor cost of repairing the single defect in question, but the cost of repairing all similar or worse defects existing in the miles and miles of sidewalk Jefferson Parish is responsible for maintaining. *See Boyle v. Bd. of Sup'rs, Louisiana State Univ.*, 96-1158 (La. 1/14/97); 685 So.2d 1080, 1083.

Whether the Parish had actual or constructive notice of a potential defect is a question of fact. *Drury v. Allstate Ins. Co.*, 11-509 (La. App. 5 Cir. 12/28/11); 86

So.3d 634, 639.  Constructive notice shall mean the existence of facts which infer actual knowledge.  La. R.S. 9:2800(D).  *Id.*  Constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.  *Id.*

Upon review, we find the trial court did not err when it determined that Plaintiff-Appellants did not prove the existence of an unreasonable defect by a preponderance of the evidence and found that EJGH did not have actual or constructive notice of the sidewalk defect.   In *Casborn v. Jefferson Par. Hosp. Dist. No. 1*, 11-1020, (La. App. 5 Cir. 5/22/12); 96 So.3d 540, this Court observed that, although there is no bright line rule, a height differential of one-half to two inches between sidewalk sections has not been held to be present an unreasonable risk of harm.  In *Casborn*, the plaintiff fell after catching her foot on what she estimated to be a height difference of two inches between concrete sections of a walkway adjacent to a hospital parking garage.  Applying the risk-utility balancing test, the Court found that the deviation in the sidewalk did not rise to the level of an unreasonably dangerous condition.  *Id*. at 544.  The vice or defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.  *Id*. *citing Chambers*, *supra*.

We also noted in *Jeansonne v. S. Cent. Bell Tel. Co.*, 08-568, (La. App. 5 Cir. 1/13/09); 8 So.3d 613, 619, that a pedestrian has a duty to see that which should be seen and is bound to observe whether the pathway is clear.  Further, the fact that a pedestrian fell does not alone automatically elevate the condition of a sidewalk to that of an unreasonably dangerous defect.  *Id*.  "Although public entities are responsible for maintaining their sidewalks in a reasonably safe condition, they are neither required to maintain the sidewalks in perfect condition

nor are they the insurers of pedestrians' safety." *Campbell v. Evangeline Par. Police Jury*, 14-1301 (La. App. 3 Cir. 5/6/15); 164 So.3d 408, 415].

We also find that the trial court did not commit manifest error when it found that EJGH did not have actual or constructive notice of the defective sidewalk. In *Casborn*, *supra*, at 542, the defendant produced evidence that showed it had no notice of the height differential in the walkway where the plaintiff fell. Similarly, in the instant case, affidavits and testimony of several facility personnel supported EJGH's assertion that they had no notice of the sidewalk defect that Mrs. Hallal claimed caused her to fall. Employees of the hospital's property management firm testified Mrs. Hallal's incident was the only one reported regarding the defective sidewalk. Also, the sidewalk defect was never identified as hazardous or dangerous, or even observed, by security and property management personnel after years of daily inspections. Because we find that the sidewalk defect did not present an unreasonably hazardous condition, and find that the trial court did not commit error when it determined that EJGH did not have actual or constructive knowledge of the defect, we find that EJGH did not breach its duty to keep its premises reasonably safe and pretermit discussion of the remaining assignments of error.

### DECREE

For the foregoing reasons, we affirm the trial court decision in favor of EGJH dismissing Plaintiffs' petition with prejudice at plaintiffs' costs.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



## FIFTH CIRCUIT
### 101 DERBIGNY STREET (70053)
### POST OFFICE BOX 489
### GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 23, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-263

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
DOUGLAS D. MCGINITY (APPELLANT)         CHARLES O. TAYLOR (APPELLEE)          MATTHEW A. SHERMAN (APPELLEE)
MEGHAN E. RUCKMAN (APPELLEE)

### MAILED
HONORABLE ROBERT J. BURNS,
JUDGE PRO TEMPORE (DISTRICT JUDGE)
JUDGE DIVISION "M"
24TH JUDICIAL DISTRICT COURT
4TH FLOOR, SUITE 4100
GRETNA, LA 70053