PER CURIAM.
M & F Bank (“M & F”) petitions this Court for a writ of mandamus compelling the Jefferson Circuit Court to vacate its order setting aside a previous order in which it had granted M & F’s motion to strike and/or quash subpoenas issued by the respondent, First American Title Insurance Company (“First American”), to depose certain individuals. We deny the petition.

I. Facts and Procedural History

On December 19, 2006, a plat for a subdivision referred to as Old Towne Station was recorded in the office of the Judge of Probate of Lee County. The plat showed lots numbered 1 through 94; it did not show a lot 95.[1] On December 28, 2006, The Shoppes at Old Towne Station, LLC (“the debtor”), executed a note in favor of M & F evidencing an indebtedness of $2,855,000; the note purportedly was secured by a mortgage on “lot 95” of Old Towne Station. On January 24, 2007, First American, through its agent, Blue Title, LLC, issued a title-insurance policy (“the policy”) to M & F insuring M & F’s purported interest as mortgagee in lot 95.
The debtor subsequently defaulted on the loan. As a result of the “title work” performed in preparation for a foreclosure on the mortgage, M & F discovered that lot 95 was not included on the recorded plat. On October 29, 2008, M & F notified First American that it was making a claim under its title-insurance policy. On November 19, 2008, M & F — represented by attorney Burt Newsome — filed an action against Blue Title and First American in the Jefferson Circuit Court, alleging breach of contract.[2] On April 27, 2009, M & F amended its complaint to include claims of negligence and bad faith against First American.
After being served with process in the action filed by M & F, First American hired attorney Mark Davis to file an action in the name of M & F seeking a reformation of the mortgage held by M & F and insured by First American; Davis filed the action in the Lee Circuit Court on March 20, 2009, naming as defendants the debtor and certain purported lienholders. First American purported to take this action in accordance with what it contends were *114 stipulations in the policy it had issued to M & F.[3]
On March 13, 2009, the debtor filed a petition in the United States Bankruptcy Court for the Northern District of Alabama (“the bankruptcy court”) declaring bankruptcy under Chapter 7 of the United States Bankruptcy Code. The debtor hired attorney Steven Altman to represent it in the bankruptcy proceedings. The bankruptcy court appointed André Toffel, an attorney, as bankruptcy trustee.[4] In turn, Toffel hired attorney Stephen Porterfield to represent the trustee’s interests in the bankruptcy proceedings. First American subsequently hired attorney Rick Johan-son to initiate an adversary proceeding in the bankruptcy court in the name of M & F against the debtor, the trustee, and other parties seeking reformation of the mortgage deed; Johanson filed a complaint in the bankruptcy court for this purpose on July 8, 2009. On July 27, 2009, Porterfield filed on behalf of Toffel, as trustee, an application with the bankruptcy court to sell the property that is the subject of the M & F mortgage free and clear of all liens. In effect, Toffel sought to render the mortgage to M & F of no effect.
Toffel subsequently filed an answer in the adversary proceeding initiated by Jo-hanson on behalf of M & F; Toffel asserted affirmative defenses, including that he was what is known as an “ideal bona fide purchaser” under 11 U.S.C. § 544(a) and in that capacity would be able to take the property at issue free of any mortgage interest held by M & F.
In addition, Toffel and Johanson filed competing motions for a summary judgment in the adversary proceeding in which they debated whether Toffel was an “ideal bona fide purchaser” under 11 U.S.C. § 544(a) and as such would be able to take the property free of M & F’s mortgage.
First American asserts in its answer to this Court:
“In an extraordinary twist of events, M & F’s counsel, Mr. Newsome, actually had communications with Toffel and Porterfield regarding research he had done for them and critiquing the brief Porterfield was preparing in support of their motion for summary judgment against [M & F,] Mr. Newsome’s client.... Mr. Newsome was actually doing research and assisting his client’s adversary who was attempting to have [M & F] determined to be an unsecured creditor.”
First American also asserts that, in the course of preparing submissions for the bankruptcy court on behalf of M & F, Newsome had conversations with the debt- or’s attorney, Altman, concerning Toffel’s filings with the bankruptcy court.
M & F contends that Newsome engaged in the aforesaid communications because a *115 resolution of M & F’s action against First American “would have to involve both the debtor’s attorney and the Chapter 7 Trustee.” M & F claims that Newsome “had negotiations looking to compromise the outstanding controversies with the debt- or’s attorney [Altman], the Chapter 7 Trustee [Toffel,] and the attorney for the Chapter 7 Trustee [Porterfield].” M & F also insists that it “shares common interests” with Altman, Toffel, and Porterfield because it asserts in the Jefferson Circuit Court action that the M & F mortgage on the property is void, and the debtor and Toffel contended in the bankruptcy court that the mortgage is void.
On December 10, 2009, the bankruptcy court entered a summary judgment in favor of M & F and against Toffel with respect to the affirmative defenses asserted by Toffel in the adversary proceeding, including the defense that Toffel was an “ideal bona fide purchaser” under 11 U.S.C. § 544(a). In so doing, the bankruptcy court declined to conclude that the M & F mortgage was invalid.
On January 19, 2010, First American filed in the Jefferson Circuit Court action subpoenas for notices of deposition and requests for the production of documents to Altman, Toffel, and Porterfield concerning their communications with M & F attorney Newsome. First American contended that it needed the information to determine M & F’s role in attempting to have its own mortgage invalidated because, according to First American, such activity would bear directly on First American’s defense of the negligence, bad-faith, and breach-of-contract claims brought against it by M & F.
On February 9, 2010, M & F, through Newsome, filed a motion in the bankruptcy court to remand the adversary proceeding that had been filed on M & F’s behalf to the state court. In the alternative, M & F requested that the bankruptcy court join First American as an indispensable party to the action. On March 22, 2010, M & F filed a motion pursuant to Rule 60(b), Fed. R.Civ.P., in which M & F contended for the first time that Johanson had no authority to file an adversary proceeding on M & F’s behalf because the policy First American issued to M & F did not contain stipulations (such as those quoted in note 3 supra) that allowed First American to take such an action. It contended that the bankruptcy court accordingly should vacate its prior summary judgment in M & F’s favor.
On January 29, 2010, M & F filed a motion to quash and/or to strike the subpoenas, which the Jefferson Circuit Court granted on February 5, 2010. On February 9, 2010, First American filed a motion to reconsider or to set aside the circuit court’s order granting the motion to quash and/or to strike. The circuit court denied the motion on the following day. On February 10, 2010, First American filed a renewed motion to reconsider or to set aside the circuit court’s order granting M & F’s motion to quash and/or to strike. On March 25, 2010, the circuit court granted First American’s motion and set aside its order granting the motion to quash and/or to strike. Four days later, M ■ & F filed the present mandamus petition.

II. Standard of Review

This Court reviews a trial court’s discovery orders only “[i]n certain exceptional cases,” one of which is “when a privilege is disregarded.” Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810, 813 (Ala.2003).
“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) *116 the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).... Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala.1995).”
Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).

III. Analysis

As recounted above, the circuit court granted First American’s renewed motion to set aside the circuit court’s order granting M & F’s motion to quash and/or to strike First American’s subpoenas to take the depositions of Altman, Toffel, and Porterfield. The circuit court reasoned as follows:
“Under the Alabama Rules of Civil Procedure, ‘Parties may obtain discovery of any matter, not privileged ... if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.’ Ala. R. Civ. P. 26(b)(1). [M & F] supports its motion [to strike] upon Ala. R. Evid. 408, which states that compromise and compromise negotiations are not admissible. Rule 408, however, is an exclusionary rule — it does not proscribe the discovery of compromise negotiations, it merely excludes such negotiations from being presented at trial. Notably, Rule 408 does not declare compromise actions as privileged and, thus, they do not fall within the category of discovery proscribed by Rule 26(b)(1)....
“Therefore, the Court deems that, at the very least, the discovery requested bears on the issue of the obligation of M & F Bank to mitigate its damages and, thus, the Court finds that [First American’s] request appears reasonably calculated to lead to the discovery of admissible evidence. Whether such evidence is admissible is a question which has yet to ripen.”
In its petition, M & F does not present an argument concerning Rule 408, Ala. R. Evid., or explain how the circuit court erred in its understanding of the limits of that rule as it relates to the separate action brought by M & F against First American. Instead, M & F contends that the communications between New-some, Altman, Toffel, and Porterfield constitute privileged communications between attorneys representing parties with common interests pursuant to Rule 502(b)(3), Ala. R. Evid. Rule 502(b)(3), Ala. R. Evid., provides, in pertinent part:
“A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client ... by the client or a representative of the client or the client’s attorney or a representative of the attorney to an attorney or a representative of an attorney representing another party concerning a matter of common interest.... ”
For all that appears, however, M & F did not present the circuit court with an argument concerning Rule 502(b)(3), Ala. R. Evid., in the course of urging that court to quash and/or strike the subpoenas for deposition filed by First American. M & F attaches the transcript of the hearing on First American’s renewed motion to reconsider or to set aside the circuit court’s order granting the motion to quash and/or to strike the subpoenas, but the transcript contains no mention of Rule 502 or any argument that the communications between Newsome, Altman, Toffel, and Port-erfield are privileged communications between attorneys representing parties with common interests. The hearing focused *117 entirely on Rule 408, Ala. R. Evid., and whether the policy First American issued to M & F contained stipulations that permitted First American to file an action on M & F’s behalf. We do not have the written submissions of the parties concerning the motion before the circuit court, but it is the responsibility of the petitioner for a writ of mandamus to provide this Court with enough of the materials below to enable this Court to make a ruling in the petitioner’s favor. See, e.g., Ex parte Ocwen, 872 So.2d at 814 n. 6 (explaining that “[t]he petitioner has the responsibility of supplying the Court with those parts of the record that are essential to an understanding of the issues set forth in the mandamus petition. Rule 21(a), Ala. R.App. P.”). Because it does not appear that the circuit court was presented with an argument concerning Rule 502(b)(8), we will not consider that argument as a reason for issuing the writ of mandamus. See Ex parte Ebbers, 871 So.2d 776, 786 (Ala. 2003) (stating that ‘“the appellate courts will not reverse the trial court on an issue or contention not presented to the trial court for its consideration in making its ruling.’ ” (quoting Ex parte Wiginton, 748 So.2d 1071, 1073 (Ala.1999))); see also Ex parte Ocwen, 872 So.2d at 814 (refusing to issue a writ of mandamus based on an argument as to which the trial court has not made the necessary findings of fact).
Though M & F never mentions Rule 408, Ala. R. Evid., in its petition, it does spend one page in its petition contending that
“M & F, through its attorney, negotiated with the attorneys for the debtor and the Chapter 7 Trustee and the Chapter 7 Trustee himself (who is also an attorney) looking to a compromise of the controversies in an effort to effect a global resolution of the case and dispose of the entire matter.”
M & F quotes Ford v. Bradford, 212 Ala. 515, 518, 103 So. 549, 551 (1925), for the proposition that “[negotiations looking to a compromise of controversies are privileged communications. This ... on grounds of public policy_” It cites Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321 (Ala.1987), as support for its assertion that “the logic behind the privileged nature of settlement negotiations is the encouragement of the settlement of controversies.”
It is unclear to this Court how M & F’s provision of advice and assistance to Altman, Toffel, and Porterfield concerning Toffel’s motion to have M & F’s own mortgage rendered invalid or ineffective constitutes compromise negotiations. Further, as the circuit court explained, Rule 408, Ala. R. Evid., does not place a complete bar on the discovery of evidence concerning negotiations and settlements. It merely limits the admissibility of such evidence. Specifically, “a party seeking discovery of documents relating to settlement negotiations must make a ‘particularized showing’ that the requested documents are relevant and likely to lead to the discovery of admissible evidence.” Ex parte Water Works & Sewer Bd. of Birmingham, 723 So.2d 41, 44 (Ala.1998) (citing Bottaro v. Hatton Assocs., 96 F.R.D. 158, 160 (E.D.N.Y.1982)).
The circuit court concluded that First American demonstrated that at the very least the depositions would lead to discoverable evidence concerning M & F’s duty to mitigate its damage. It also is apparent that the depositions could lead to discoverable evidence concerning First American’s defense to M & F’s bad-faith claim, if not also to evidence concerning its defense to M & F’s other claims. M & F does not dispute that the depositions could lead to discoverable evidence. It simply insists *118 repeatedly that such communications are privileged under Rule 502(b)(3).

IV. Conclusion

Based on what M & F presented to the circuit court and to this Court, we cannot conclude that it is entitled to a writ of mandamus directing the circuit court to reverse its order setting aside its earlier order granting M & F’s motion to strike and/or quash the subpoenas. Accordingly, its petition is denied.
PETITION DENIED.
COBB, C.J., and LYONS, STUART, BOLIN, and MURDOCK, JJ., concur.

. According to an affidavit from Chris Eck-roate, the project engineer for the Old Towne Station subdivision development, and as conceded by M & F’s attorney in a hearing on the motion below, a lot apparently was labeled "Lot 95” on the plat after it was recorded.

. Blue Title has since been dismissed from this action.

. First American contends that the stipulations state, among other things, that
"[First American] shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured.”
According to First American, a further stipulation states:
"In all cases where this policy permits or requires [First American] to prosecute or provide for die defense of any action or proceeding, the insured shall secure to [First American] the right to so prosecute and provide defense in the action or the proceeding, and all appeals therein, and permit [First American] to use, at its option, the name of the insured for this purpose."

. First American asserts, and M & F does not dispute, that Toffel has acted in his capacity as bankruptcy trustee in relation to the underlying litigation, and not as an attorney.